# Exhibit 6

9 June 98

From:     Charles A. Amstein   (CAA)
To:       FRA
Date:     Tuesday, June 9, 1998   10:48 pm
Subject:  Tomorrow

Now, I am able to connect via CNS / where at 7 this evening I was unable to do so.
I plan to come to the church tomorrow afternoon, after I am finished at General, arriving at the office by 2 or soon after, hoping we can visit for a few minutes.
I found Jill Danger's lawyer to be a very reasonable man.
  I know he would like to subpoena me, should this whole matter go to trial, but he was very clear that he does not want to subpoena me unless I want to testify.
At the moment, I would certainly prefer not to testify.
There is not only a Will signed by Julia last October, there is also a brief note very clearly in her handwriting, stating that she wants Betsy to have "right of survivorship" where the apartment is concerned.
The lawyer is trying to determine if any of us who knew Julia knew that she was angry with Jill for some reason. I certainly do not know that she was.
The interesting thing is that he has a letter from Betsy's lawyer saying that Betsy wants to sell her mother's apartment.
He has a large document showing the activity in the Trust Fund, and it does not (at least he has not yet seen it) indicate a monthly dispersal to an account from which Betsy paid her mother's expenses.(Yet, I know Betsy was doing this)
The Trust is not affected by the new Will. Thus, Betsy and Jill are involved in an expensive dispute (where legal fees are concerned) regarding the apartment, and some checking accounts which I don't think have very large balances in them.
Jill's lawyer has been urging Betsy's lawyer to find a basis of settlement, as soon as possible, but without success so far.
All for now ...

2 Feb 99

| | |
|---|---|
| From: | Charles A. Amstein |
| To: | Fred Anderson |
| Date: | 2/2/99 5:05PM |
| Subject: | Betsy |

is going to have a busy week.
I just talked to Jill's lawyer, and he is deposing Betsy on Friday,
  and perhaps on an additional day, if needed.
He has also filed suit against Betsy (for Jill) because Betsy had over the years signed checks using proceeds from the trust for her
personal needs. And Jill should have received as much as Betsy.
I had known this happened in recent years, when Julia told me Betsy was "paying off her credit card debts" by having power of attorney and establishing a checking account into which the monthly Trust deposit was made.
And of course Julia talked to Marianne much more frequently
than to me. And Marianne and I thought it was pretty obvious
that a lot of the monthly proceeds from the Trust for Julia were
in fact never enjoyed by Julia
Ken Wasserman says he has evidence that this went on for a
number of years, and the total involved is in 6 figures.
Ken says the people at Banker's trust knew that there would be
repeated requests for money for (dare I say it) apartment repair,
but never really questioned what was happening.
I suppose because they thought Julia was paying attention.

---

Jan 99

Linda Badger - Betsy called - wants info about Fred at Pine Street
Ginny told her to call -
Ginny (or Betsy?) head of group to get rid of Fred

# Exhibit 7

Case 1:09-cv-05314-RJH-FM   Document 77-2   Filed 03/23/10   Page 4 of 16

 

# MADISON AVENUE PRESBYTERIAN CHURCH
921 Madison Avenue, New York, NY 10021-3595 (212) 288-8920 Fax. (212) 249-1466

April 20, 1998

Elizabeth Combier
315 East 65th Street, #4C
New York, NY 10021

Dear Betsy,

Thank you for coming to deal with the things in your mother's MAPC office on Friday. And thank you for your letter of March 30th. I will always treasure the love and friendship your mother showered on me from the day I arrived here until the last time I saw here, the afternoon before she died.

I will not comment on the middle part of your letter of March 30 except to say that, in my opinion, your mother counted Marianne and John Weaver among her closest friends.

At my recommendation, the Session of this church has voted to transfer you and Jill to the Inactive Members' Roll.

I made this recommendation for two reasons. First, your relationship to this church has been inactive since you and your children began attending the Brick Church. My notes have reminded me that Julia rather officially told me, in September of 1996, that you and your daughters were going to the Brick.

Secondly, as legal clouds gather around you and Jill, I felt it appropriate to move this church to a position of neutrality where the two of you are concerned, and thus I recommended that both you and Jill be suspended from our Roll of Active Members.

I will do my very best, personally, to remain neutral as Jill files suit against you regarding your mother's estate. I will of course be willing to talk with either one of you, but I may be hesitant to initiate such conversations.

Finally, please know that the box containing your mother's cremains is being safely kept in my office until you and Jill make some decision about their disposition. Although we have begun to discuss establishing a Columbarium here, and it would certainly be suitable to place your mother's ashes in such a place within these buildings, it is far from certain now when or if a Columbarium will be available here.

I will always be concerned about you and David and your children.

Sincerely,

Charles A. Amstein
Associate Pastor

The Rev. Charles A. Amstein, *Associate Pastor*
Dr. John Weaver, *Music Director / Organist*
Patricia S. Pell, *Day School Director*

The Rev. Dr. Fred R. Anderson, *Pastor*
The Rev. Dr. David H.C. Read, *Pastor Emeritus*

J. Richard Frey, *Business Manager*
Fred W. Linstedt, *Building Services Director*
J. Michael Bart, *Communications / Systems*



# MADISON AVENUE PRESBYTERIAN CHURCH
921 Madison Avenue, New York, NY 10021-3595 (212) 288-8920 Fax (212) 249-1466



May 12, 1998

Elizabeth Combier
Theater Kids
315 E. 65th Street #4C
New York, NY 10021

Dear Betsy,

It was good to see you here on Sunday, and to have you worship here. I am enclosing a copy of the list of those who have given to the Saint Andrew Music Society in memory of your mother, and will also send a copy of the list to Jill. I have thanked them, but you and Jill may want to do so, also.

I have read your letter of April 27 several times. I assume the 1994 meeting you refer to is the one in Jane Usdan's apartment. I don't think of myself as an unhappy person. Surely you must realize that if your comments about what I said at that meeting where working with Fred Anderson is concerned were accurate, I would have moved on by now. In fact, Fred and I have learned how to work together. What I said in Jane's apartment was that Fred Anderson is here as the result of a careful and legitimate call process. He isn't going anywhere. The rest of us need to find a way to work with him, or move on.

Because your being here this past Sunday would seem to indicate that I have gotten your attention, I would like to respectfully ask that you read my letter of April 20 again. Your letter of April 27 only responds to the first of the two reasons I offered for my recommendation that you be transferred to our Inactive Roll. That is, your visibility here, or lack thereof.

But you have not responded in your letter to what I still believe to be the most important reason for transferring you and Jill to our Inactive Roll. And that is the legal conflict between the two of you regarding your mother's estate. Although your mother talked to me many times about the animosity between you and Jill, I'm not sure I have ever really understood the basis of this animosity. I know it was very painful for your mother, over and over again, because she was caught in the middle.

I also know that both you and Jill made financial demands on your mother, because your mother told me about them. And as I said to you in your mother's apartment on March 16, I think your mother always tried very hard to treat you and Jill equally, financially. Consequently, I certainly don't blame Jill for taking legal action against you if it is true that Julia signed a new Will in November which excludes Jill.

You see Betsy, I want to honor your mother's memory by distancing this church from you and Jill as long as your conflict, including now your legal conflict, continues. If you and Jill can provide me and the MAPC Session evidence of a sincere desire to be reconciled to one another, I would be willing to ask the MAPC Session to consider restoring both of you to our Active Members' Roll.

Sincerely,

Charles A. Amstein
Associate Pastor

---

The Rev. Charles A. Amstein, *Associate Pastor*
Dr. John Weaver, *Music Director / Organist*
Patricia S. Pell, *Day School Director*

The Rev. Dr. Fred R. Anderson, *Pastor*
The Rev. Dr. David H.C. Read, *Pastor Emeritus*

J. Richard Frey, *Business Manager*
Fred W. Linstedt, *Building Services Director*
J. Michael Bart, *Communications / Systems*

# Exhibit 8

**The E-Accountability Foundation**
315 East 65th Street
New York, NY 10021
**Betsy Combier, President**

Mrs. Mary Santamarina
Law Clerk, Surrogate Court
Judge Renee Roth                                                August 1, 2003
31 Chambers Street
New York, NY 10007

RE: 1042/98
    Danger v Combier

Dear Mrs. Santamarina:

    I am writing this letter to respectfully bring to your attention the very troubling statements made by Mr. Kenneth Wasserman, Attorney for my sister, Julia Danger in the above case 1042/98, to Fred Anderson and Charles Amstein, Defendants in case #115354/99 currently in Supreme Court of the State of New York. I state "once again" due to the questions raised in my letter to you dated August 29, 2001, which have not been resolved. Mr. Wasserman still has given me nothing that I have asked for in my requests for Discovery and Inspection. At the present time I am still Pro Se in the above action, due to the unafforable expense of hiring representation.

    Mr. Wasserman has, over the past month, sent to me several letters telling me to sign a stipulation which you asked him to write. I have not as yet replied to him due to the fact that I am awaiting the decision of Judge Roth in the Motion and Cross-Motion presented to her on May 22, 2001, and have given Mr. Wasserman all of the documents he is asking for once again in his stipulation. I have done everything possible to move this case toward resolution, namely, the probate of my mother's final Will dated November 1997, in accordance with my mother's wishes. I have given Mr. Wasserman all the discovery he has asked for, I have sat with him while he looked through all the documents and exhibits for the third time, and I have complied willingly with every request made of me. You informed me during a telephone conference that I must Bates-stamp my documents, a term I had never heard of, or I would be precluded from testifying in my behalf at trial, and I immediately complied, as I have with all your requests to date. I also sent all of my husband's and my tax records to Mr. Wasserman, in an effort to reveal everything my sister requested for her discovery. I did, as my sister demanded, sell my mother's apartment rather than move there as my mother wished.

    My sister and Mr. Wasserman have never complied with any of my requests for discovery and inspection. I have attached my Third Notice of Discovery and Inspection, as well as a letter sent to Mr. Wasserman February 25, 1999 proposing an end to a senseless expenditure of meager funds in what has now become 5 years of more and more requests by Mr. Wasserman. I am ready to go to trial with all my witnesses.

    I would like to inform you that a Motion was just filed by my lawyer, Mr. Jonathan Landsman, in my Supreme Court action File #115354/99, to compel Mr.

Wasserman to answer questions about his involvement in this case. At the deposition of Mr. Charles Amstein, the former Associate Minister of Madison Avenue Presbyterian Church, emails were produced which show that Mr. Wasserman advised Mr. Amstein not to give me my mother's ashes, a tort in New York State. He refused to answer any questions about this at his deposition. The Motion will be presented for oral argument on September 5, 2003 in the Supreme Court. I have attached to this letter a copy of one of the emails detailing Mr. Wasserman's actions as well as several pages of the Memorandum of Law on the tort.

   I respectfully request information on how to proceed, in light of the questions raised by Mr. Wasserman's actions described above and in the attached documents. Thank you.

DATED: August 12, 2003

                Respectfully,

                Elizabeth "Betsy" Combier
                Pro Se
                315 East 65th Street
                New York, NY 10021
                212-794-8902

CC: Mr. Kenneth Wasserman
   Mr. Jonathan Landsman

KIEFFER AND HAHN LLP
51 EAST 42ND STREET
NEW YORK, NY 10017

TELECOPIER
(212) 490-4944

TELEPHONE
(212) 490-4949

October 27, 1998

Kenneth T. Wasserman, Esq.
350 Fifth Avenue
Suite 4810
New York, NY 10118

Re: Estate of Julia Tashereau

Dear Ken:

I refer to your letter dated October 15, 1998 responding to my letter dated September 9, 1998.

You are misinformed about gifts to Jill's children during the summer of 1997. Betsy did not scream that the decedent was giving the children nothing. In fact she purchased a wallet and a watch for the children for her mother to give to them at that time.

Your continuing gratuitous remarks characterizing Betsy's conduct are not only inaccurate but also inappropriate. I have deliberately refrained from describing Jill's conduct toward her mother, especially during her stay with her during the summer of 1997, until it becomes necessary to do so. I expect you to do the same with respect to Betsy.

I am enclosing copies of letters to The Villager and autographs which the decedent told Betsy that Jill removed from the apartment without the decedent's permission in the summer of 1997. The original documents should be returned immediately by Jill to Larry Marks to hold in safekeeping with the other Villager letters. If Jill has sold them to an autograph dealer she should account for the sales proceeds and send a check payable to the Estate to Betsy for the sales proceeds. Based upon the information in your letter Jill obviously makes no claim that these items were given to her.

Betsy has complied with the letter agreement dated July 1,

2

1998 between us despite Jill's failure to identify the items described therein within the agreed time limit. Betsy has not disposed of or sold Jill's letters to Betsy which are clearly Betsy's property for which no legitimate claim of ownership could be made by Jill. The stool was purchased by her in Mexico in July or August 1970 when Jill was in Hawaii with her mother. As far as Betsy knows, Jill was never in Mexico. Betsy never agreed to deliver to Larry Marks property belonging to Betsy. Betsy has no other correspondence between the decedent and Jill or Julie. Betsy has delivered to Larry Marks all of her mother's diaries that were in the apartment and she has no other diaries. As far as Betsy is aware her mother stopped writing in a diary on a daily basis during the years prior to her death. Your unsubstantiated allegations regarding the contents of missing or non-existent diaries are rejected on their face. The mink coat which was in storage was sold for scrap value prior to our agreement which dealt in any event only with the contents of the apartment.

Betsy has delivered to me the decedent's financial records and financial correspondence over the last three years of her life and the estate accounts which you requested in your letter of October 15th. These records are available for your inspection at our office. Please telephone me to make an appointment for that purpose so that the examinations can proceed without further delay.

Very truly yours,

Edward P. O'Hanlon

EOH:mh
cc: Mrs. Elizabeth Combier

F:\CLIENTS\TASCHERE\10-27-98.LET

# DRAFT

June 16, 1998

Kenneth T. Wasserman, Esq.
350 Fifth Avenue
Suite 4710
New York, NY 10118

Re: <u>Estate of Julia Elizabeth Taschereau</u>

Dear Mr. Wasserman:

Referring to our telephone conversation on Friday June 12, 1998, this letter is written to set forth the agreement on behalf of our client, Elizabeth Combier, as Preliminary Executrix of the Estate of Julia Elizabeth Taschereau ("Elizabeth") and your client, Julia Danger ("Julia") with respect to Julia's access to the decedent's apartment No. 18D (the "Apartment") at 201 East 77th Street, New York, New York.

Elizabeth agrees that without Julia's consent she will not remove, sell or dispose of any of the contents of the Apartment until July 27, 1998 when she intends to commence repairs, painting and refinishing of floors for sale of the Apartment.

Julia may have access to the Apartment from the date of your acceptance of this letter until July 26, 1998 between the hours of 9:00 A.M. and 4:00 P.M. provided that you accompany Julia and that Julia does not remove anything from the apartment including items which Julia claims as her property without Elizabeth's consent. Smoking in the Apartment will not be permitted at any time.

Please let me know when Julia will be arriving in New York, and Elizabeth will leave the key to the Apartment with the concierge of the building for your use. The key should be returned to the concierge at the conclusion of each visit.

As we also discussed, please inform me by separate letter if Julia consents to Elizabeth's removal of the toys in the Apartment prior to Julia's arrival for donation to a charity.



This agreement shall not be effective until you sign the copy of this letter and return it to me.

Sincerely yours,

Edward P. O'Hanlon

Accepted:

_____
Kenneth Wasserman, as
attorney for Julia Danger
June _____, 1998

f:\cl\taschere\6-16-98.let

LAW OFFICES<br>
**PETER S. SCHRAM, P.C.**<br>
350 BROADWAY, SUITE 515<br>
NEW YORK, NY 10013<br>
(212) 896-3310<br>
FAX (212) 896-3316

PETER S. SCHRAM
STACI A. GRABER

ESTHER C. LEVI
PARALEGAL
CINDI KIM
AWAITING ADMISSION TO NY BAR

August 10, 2006

Elizabeth Combier
315 East 65th Street
Apt. 4-C
New York, NY 10021

Kenneth T. Wasserman, Esq.
350 Fifth Avenue, Suite 4810
New York, NY 10118

Re: **Estate of Julia Elizabeth Taschereau**

Dear Ms. Combier and Mr. Wasserman:

Laurence Mark has responded to my letter of July 27, 2006, a copy of which was sent to both of you. Mr. Mark has confirmed that he is holding the items referred to in my letter. He is ready and willing to turn the items over to the Public Administrator.

Papers filed by Ms. Combier with the Surrogate's Court state that the Toscanini manuscript alone is valued at $80,000; she values the remaining property at a total of $160,000. The Public Administrator, without an appraisal of the items, must assume the accuracy of these valuations.

I have discussed the storage of these items with the Public Administrator. She does not believe it is appropriate to store such potentially valuable, and presumably fragile, property in her warehouse. The Public Administrator believes these items should be treated with special care and stored in a controlled environment.

At this time, there are no funds available to the Public Administrator to pay for such storage. Please advise whether you are willing to contribute to the cost of storage, or whether you have any alternative suggestions. I do not know whether the property has sustained any damage in the years it has been held by Mr. Mark, but clearly the estate would benefit by moving the items to a proper storage facility as soon as possible.

Very truly yours,

Peter S. Schram

PSS:ym

# Exhibit 9

*Sent to Kenneth Brown March 24*

# SURROGATE'S COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

Probate proceeding, Will of

**Julia Taschereau**, Deceased.

NOTICE OF PROBATE

File No. 1042.98

NOTICE IS HEREBY GIVEN, that the last Will and Testament, dated the **21st** day of **November, 1998**, of **201 East 77 St** late of **New York City** in the County of New York and State of New York, has been offered for probate in the Surrogate's Court of the County of New York; that the proponent of said Will is **Elizabeth Combier**, who resides at **315 East 65 St. 4C NYC 10021**; that the following are the names and the post-office addresses of each person named or referred to in the said Will as substitute or successor executor(trix), trustee, guardian, legatee, devisee or other beneficiary, as set forth in the petition herein, who has not been cited or has not appeared or waived citation; that as to such persons as are infants or incompetents, the names and post-office addresses of the persons to whom an additional copy of the Notice of Probate is required to be mailed are shown; and that opposite the name of each person is a characterization whether he/she is referred to in said Will as testamentary trustee or as guardian or as substitute or successor executor(trix) or as beneficiary

| Name | Post-Office Address | Nature of Interest or Status |
|---|---|---|
| Mr. Kenneth Brown | Shankopf Communications 379 West Broadway #305 NY NY 10005 | successor executor |