UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 5/28/10

———————————————————— x

ELIZABETH COMBIER,

                         Plaintiff          DOCKET NO. 09 CIV 5314 (RJH)(FM)

     -against-                              **NOTICE OF MOTION
                                            TO SANCTION
THE STATE OF NEW YORK,  ET AL.,             DEFENDANT  LAWRENCE MARK
                                            AND GRANT PLAINTIFF'S
                         Defendants         MOTION FOR DEFAULT JUDGMENT**

———————————————————— x

**PLEASE TAKE NOTICE** that upon the annexed affirmation of

plaintiff  Elizabeth Combier, affirmed (signed) on May 21,

2010, and upon the exhibits attached thereto, and upon the

pleadings herein, plaintiff will move this Court, before

United States District Court Judge Richard J. Holwell, for

an order pursuant to issue an order pursuant to Rule 11(b);

Rule 16(f)(1)(A)(B)(C), and 16(f)(2); Rule 26(a)(1) and

(g)(3); Rule 37(a)(4), 37(B)(2) and Rule 55(a),(b)(2),(d)

of the Federal Rules of Civil Procedure, the local rules of

this Court which prohibit frivolous papers outside of the

deadline set for Opposition  and, more specifically, the

specific rules of United States District Court Judge

Richard J. Holwell, granting Plaintiff her request for

sanctions against Defendant Lawrence Mark ("MARK") in the

case captioned above for Mark's failure to obey this

Court's pre-trial conference memos, for Defaulting on

providing an Answer to the Complaint, and for his

committing Larceny and Perjury, as well as any other relief

that is just under the circumstances described herein as

well as in all papers filed by Plaintiff under the caption

and Index number posted above.

**I declare under penalty of perjury that the foregoing is**

**true and correct.**

Dated: New York, New York

May 21, 2010

Elizabeth "Betsy" Combier
315 East 65th Street, Apt. 4c
New York, NY 10065
212-794-8902

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————————x

ELIZABETH COMBIER,

                      Plaintiff        DOCKET NO. 09 CIV 5314 (RJH)(FM)

      -against-

**AFFIRMATION IN
SUPPORT OF MOTION
TO SANCTION
DEFENDANT
LAWRENCE MARK
AND GRANT PLAINTIFF'S
MOTION FOR
DEFAULT JUDGMENT**

THE STATE OF NEW YORK,  SUPREME COURT
OF THE STATE OF NEW YORK APPELLATE
DIVISION FIRST DEPARTMENT, HON, JOHN T.
BUCKLEY, in his individual and official capacity, HON.
KARLA MOSKOWITZ, in her individual and official
Capacity, ERIC REESE, in his individual and official
Capacity, LAUREN HOLMES, in her individual and official
capacity, DAN RAMOS, in his individual and official
capacity,ELIOT SPITZER, in his individual and  official
capacity, as the former Attorney General of the state of
New York, HON. JONATHAN LIPPMAN, in his individual
and official capacity as the former Presiding Judge of
the New York Supreme Court, Appellate Division, First
Department, HON RENEE R. ROTH, in her individual
and official capacity as the former Manhattan Surrogate Judge,
HON. TROY WEBBER, in her individual and official
capacity, BARBARA LEVITAN, in her individual and
official capacity, MARIA SANTAMARINA, Esq.,
in her individual and official capacity, ETHEL GRIFFIN,
in her individual and official capacity, PETER SCHRAM,
in his individual and official capacity, DR. FRED
ANDERSON, in his individual and professional capacity,
KENNETH WASSERMAN, in his official and individual
capacity, FRANCESCA SABADIE, individually,
LAWRENCE MARK,  individually, JULIA DANGER,
alleged Objectant,  ELI UNCYK, in his individual
and professional capacity, JEFF KOFSKY,
in his individual and professional capacity, JONATHAN
LANDSMAN, in his individual and professional capacity,
DOROTHY HENDERSON in her individual and
professional capacity, GUIDE ONE INSURANCE
COMPANY, PRESBYTERY OF NEW YORK CITY,

                    Defendants
———————————————————————————x

1

**I, Elizabeth Combier, affirm under penalty of perjury that:**

1. I, Elizabeth Combier, am the plaintiff in the above entitled action, and respectfully move the Court of United States District Judge Richard J. Holwell to issue an order pursuant to Rule 11(b); Rule 16(f)(1)(A)(B)(C), and 16(f)(2); Rule 26(a)(1) and (g)(3); Rule 37(a)(4), 37(B)(2) and Rule 55(a),(b)(2),(d) of the Federal Rules of Civil Procedure, the local rules of this Court which prohibit frivolous papers outside of the deadline set for Opposition and, more specifically, the specific rules of United States District Court Judge Richard J. Holwell, granting Plaintiff her request for sanctions against Defendant Lawrence Mark ("MARK") in the case captioned above for Mark's failure to obey this Court's pre-trial conference memos, for Defaulting on providing an Answer to the Complaint, and for his committing Larceny and Perjury, as well as any other relief that is just under the circumstances described herein as well as in all papers filed by Plaintiff under the caption and Index number posted above.

2. Defendant Mark has willingly, recklessly, knowingly and purposefully disregarded Plaintiff's property rights (see, Plaintiff's Affirmation in Support of Default Judgement) to the items given to her in her mother's last Will, which was written and executed in November, 1997 and filed in

2

Manhattan Surrogate Court for Probate on March 17, 1998;
Mark has also lied to this Court in his "Affidavit in
Opposition to Motion For Default Judgment" dated April 13,
2010, at the request of the other Defendants in this case,
all of whom acted in concert, and each contributed an
important illegal and unethical action to perpetrate the
RICO Plaintiff has complained about in her original
complaint. Plaintiff has material, relevant, and
substantial evidence to prove all her claims. This Court
should stop it's sabotage of Plaintiff's rights to pursue
the wrong-doing proven by the papers submitted in this case
by Defendants, and by Plaintiff.

Defendants are exhibiting the "arrogance of immunity" to
prosecution, as seen in the example of Andrew Cuomo's
representative, Monica Connell, when she stated to
Plaintiff (and this was taped) "I don't have to file a
Notice of Appearance because I will get this case
dismissed" in October 2009. (See Plaintiff's Opp To Dismiss
Affirmation). Additionally, please review Connell's changed
front page to the April 1, 2009 transcript, submitted with
her Motion To Dismiss, as a reason for this Court to
falsely give Defendants jurisdiction for their actions
where there isn't any.

3. All the information gathered by Plaintiff was found to be a conspiracy after Plaintiff almost died in Lenox Hill Hospital on July 22, 2006, which meets the statute of limitations for her causes of action against all the Defendants in this case. Before July 22, 2006, Plaintiff relied on her attorneys and the courts to honor her right to defend her property interests and Constitutional Rights to due process.

4. Plaintiff's investigation that she started after July 22, 2006 includes the following (incorporate herein the information previously submitted to this Court in the Complaint, and the subsequent Affirmations and Exhibits): Upon information and belief, starting on or immediately after March 16, 1998, Mark met the mind of Defendant Kenneth Wasserman, as well as the minds of Defendants Guide One Insurance Company, The Presbytery of New York City, Dr. Fred Anderson, Julia Danger, Francesca Sabadie, Eli Uncyk, Jeff Kofsky, Jonathan Landsman and Eliot Spitzer/Andrew Cuomo and all the State Actors/Defendants in the case at bar ("Defendants") as they joined into a conspiracy to harm Plaintiff immediately after the death of Julia Taschereau, Plaintiff's mother, who died during the night of March 15-16, 1997).

Defendant Mark was given the stolen property from Julia Taschereau's apartment, illegally removed on or about July 25, 1998 by Defendant Wasserman, and deliberately withheld this property from Plaintiff for twelve years without any justification. Mark has no claim to any property interest in this matter. Plaintiff never gave her permission for the withholding of this property from her for twelve years, and was assaulted twice by Mark when she tried to move the property (with a witness) to a storage facility so that the property could be appraised. (Citation, 2006). During the years 2000-2006 Plaintiff begged her attorneys to get the Surrogate Court to recognize the unverified objections as a nullity, and to pursue actions against her sister Danger, but her Attorneys would not help her. Nonetheless, Plaintiff paid the bills of her Attorneys for these years, then stopped, when Judge Roth and her law Department Attorney Mary Santamarina threatened her and changed the Taschereau Will for four days (July 19-24 2006). Thus Plaintiff relied on her Attorneys and the other Defendants to her detriment, until July 22, 2006 with an Order that stated that the Will of Julia Taschereau filed in Surrogate Court on March 17, 1998 was never filed, and never existed. (Second Amended Complaint, "SAC"). After being discharged on July 24, 2006, Plaintiff's

5

investigation into a possible RICO claim against the
Defendants upon which she now makes this Affirmation.
Mark told Plaintiff that he received her Summons and
Complaint, and all subsequent papers, during a taped
conversation at 4:30PM on March 5, 2010. Plaintiff taped
this conversation in accordance with New York State law,
that anyone can tape anyone else without letting the second
person know, as long as the person doing the taping is part
of the conversation. Plaintiff has posted the law on her
website, also available on the site Reporters For Freedom
Of The Press, in an article called "Can We Tape?"
Plaintiff hired professionals to serve Mark which was
executed in August 2009, and the certified proof of service
was filed in this Court, upon which the clerk of this Court
certified the Request For Default Judgment. Plaintiff also
has filed in this court the pictures of the property held
in the garage of Mark, who must be held accountable for two
assaults on Plaintiff as well as the unjustified negligence
of holding her property in a garage for twelve years, then
lying about being served. The Default Judgment is justified
under the circumstances, and sanctions for perjury by Mark
are proper and just. No Rule 60 Relief can be given in this
case, and a Default Judgment as well as sanctions are
appropriate as a matter of law.

BACKGROUND

5. The first time that Mark met Plaintiff was March 30,
1998, at MAPC's Memorial Service for Julia Taschereau, a
person with whom Mark never had a conversation and whom he
never met. Mark claimed to be a "long-lost cousin" as in
all the great movies that have been produced in the last
century (Affirmation In Support Of Default Judgment "AFF
Default")

Mark was at the Memorial Service for the sole purpose of
furthering the RICO that had already been established with
the purpose to steal the property left to Plaintiff by her
mother in the 1997 Will (SAC, Will of Julia Taschereau)
with Anderson, Wasserman, Danger, Sabadie, Madison Avenue
Presbyterian Church, The Presbytery of New York City, and
Guide One Insurance Company. Upon information and belief,
this conspiracy/RICO was funded and fostered by Guide One
Insurance Company, (as per Peggy Mundy, lawyer for Guide
One who worked at the Litigation Department of Guide One in
Indiana, she spoke with Plaintiff and Defendant Jonathan
Landsman in 2004), with the focus being the theft of
property, but also in retaliation for Plaintiff exposing
the financing of real estate property owned by the rich and
famous in New York City and use of Madison Avenue
Presbyterian Church ("MAPC") at 921 Madison Avenue in New

York City as collateral, covertly and without the Church members' knowledge or consent. (See "Without A Prayer For Relief" posted on Parentadvocates.org). The President of the MAPC Board of Trustees, David Johnson, was assisted in this work of hiding collusion with Prudon Construction Company and investing money for MAPC, by Vincent "the Chin" Gigante, (Exhibit 1), a well known member of the Mafia, before he was allegedly killed in the United States Medical Center for Federal Prisoners on December 19, 2005. Johnson's wife Caroline was President of the PTA at Nightingale Bamford, where Plaintiff's three older daughters attended elementary school; The President of the Board of Trustees of MAPC was, during this time, Ann McChord, who was also Assistant Head of School at Nightingale Bamford, the school to which Manhattan District Attorney Robert Morganthau sent his youngest daughter. Plaintiff spoke with Morganthau personally about the matter complained about herein, on September 12, 2006, the same day that Defendant Karla Moskowitz ordered Plaintiff into her courtroom without jurisdiction in the case "Danger v Combier". This case was made up by Wasserman and pursued by all Defendants until Plaintiff wrote a Motion To Dismiss in July 2007, that was granted, as was her Reply to Wasserman's Perfected Appeal submitted to the Appellate

Division on October 1, 2009 (SAC). From 2000-2006 Plaintiff was forced to pay for the services of Eli Uncyk, Jeff Kofsky, and Jonathan Landsman, as they deliberately and maliciously harmed her by denying her the right to defend herself against the meritless attacks of Wasserman, Danger et. al., left her penniless, and almost killed her with fraud and deception. (EXHIBIT 2).

The day after the Memorial Service at MAPC for Julia Taschereau, MAPC Session voted Plaintiff off of the membership roll. Plaintiff filed a complaint with the Presbytery, and was placed on trial there for one year. She won her membership back in July 1999, and then sued for damages from Anderson and Mr. Charles ("Chuck") Amstein for withholding her mother's ashes from her (Verdict, SAC). Indeed, Amstein admitted withholding the ashes, saying that Julia Taschereau would have wanted him to honor her memory by keeping them from Plaintiff (Amstein deposition) in order for him to prevent Plaintiff from burying Taschereau's ashes without the presence of Julia Danger (which was Wasserman's outrageous accusation). Danger and Plaintiff had already worked out the burial before Amstein and Anderson stepped in to defame Plaintiff's character and withhold the ashes.

6. All the Defendants know that Julia Danger is mentally incompetent. Danger beat Julia Taschereau up from the age of eight, according to Plaintiff's earliest recollection (deposition, Surrogate Court) and has shown aspects of her illness in the hundreds of pages that she wrote herself throughout her life. EXHIBIT 3. In these letters she states that she has no respect for her mother. On July 25, 1997, Danger physically abused Taschereau, and left her crying in pain on the sofa while she, Danger, flew to California with her daughter and her daughter's boyfriend on a very expensive vacation. Lenox Hill hospital documented the injury to Taschereau, and the abuse of Danger. (EXHIBIT 4). Ethel Griffin obtained these records after the trial on the Probate of Taschereau's Will was over, shared them with Wasserman, and never gave them to Plaintiff. This Court should take Judicial Notice that Ethel Griffin used the title "Will of Julia Taschereau" to obtain these records before hiding them from Plaintiff.

In July 1997, soon after Taschereau left the hospital, she decided to have a Will drawn up leaving none of her estate – at that point her apartment at 201 East 77th Street – to her daughter Danger, for all the abuse and putting her in the hospital on July 25, 1997. Taschereau asked her Co-op

Board to make Plaintiff a "Joint Tenant" (Oct. 31, 1997)
without saying anything to Plaintiff (EXHIBIT 5).
Taschereau also gave Power Of Attorney ("POA") to
Plaintiff, as she was afraid of Danger harming her again.
(EXHIBIT 6). A copy of the POA was sent to Banker's Trust
for filing and for review by Danger, which occurred in
1997, and was the reason for the beating by Danger of her
mother. Taschereau knew that the Banker's Trust Bank Samuel
Strauss Trust account would, upon her death, give both of
her daughters, the remaindermen, more than half of a
million dollars, so Danger would be taken care of.
Taschereau was the co-Trustee of this Trust set up by her
father, and the Trust was not part of her estate.
Defendants made believe, in the years 2000-2006, that it
was part of the Taschereau Estate, and Plaintiff relied on
this false information, much to the glee of the Defendants.
7. Plaintiff uncovered the MAPC unlawful business and
exposed the perpetrators in her article "Without A Prayer
For Relief" that was posted on her website
"Parentadvocates.org" on October 22, 2006, after she won
her Opposition to the Order To Show Cause filed by Guide
One Insurance Company in December 2005. Guide One attempted
to alter the CPLR by reversing the Plaintiff and Defendant
in the case against MAPC in order to get an Order Of Prior

Restraint. Judge Wilkins asked if Plaintiff was "the Press", and then, rightly dismissed Guide One's OSC.

8. Plaintiff alleges that the fact that Julia Taschereau wrote a Will, had an attorney execute it, and signed the Will in front of three witnesses didn't matter to Defendants. Indeed, Wasserman never filed the signed original copies of the 1404 Depositions of the witnesses to the Will signing that were completed in 2001, until after all the depositions were read on September 14 and 15, 2009, into the record of the bench trial held illegally in front of Interim Acting Surrogate Judge Troy Webber (removed from office in April, 2010). No records were filed in Surrogate Court for the Probate Proceedings of the Will of Julia Taschereau.

9. It is a fact that not only did Defendants keep all records of the Will of Julia Taschereau out of the Manhattan Surrogate Court records room and thus could not allow Plaintiff to move the records to the Appellate Division, but Defendants ripped up her subpoena, (SAC) and permitted Defendant Roth to hold courtroom hearings with no court reporter or taping for anyone (except Plaintiff, who filed a Motion for a Court Reporter in 2006) during her fifteen year reign of terror and fraud. Mark, in possession of the stolen property, was continuously told by Defendants

that he would not be held responsible for having the
property or for neglecting to keep it in good shape. He was
given assurances that the Defendants would protect him, and
he need not listen to anything that Plaintiff told him.
Mark continues to believe he is protected by his co-
conspirators, and can perjure himself before this court.
Plaintiff can prove Mark's perjury and requests that this
court grant her request for default judgment and sanctions,
and for the relief of a return to her of the property so
that the items may be appraised and the negligence/theft
assessed.

ARGUMENT

10. The foundation of the RICO complained about herein was,
and is, to void the 1997 Will of Julia Taschereau as never
valid, and/or never really existing, in order to take
control of the property left to Plaintiff in that Will. In
2006, after not being able to prove the Will was invalid
despite ignoring all the motions submitted by Plaintiff
asking for relief and Probate, Defendant Roth ordered that
Julia Taschereau died without a Will, (Second Amended
Complaint "SAC") then changed the title of the action from
"Probate Proceedings of the Will of Julia Taschereau"
(March 1998-July 19, 2006; July 24, 2006-present) to "The
Matter of the Estate of Julia Taschereau" (July 19, 2006-

July 24, 2006) and then back to the "Probate Proceedings"
when Roth ruled that the Will had been executed correctly,
and back to the "Matter of The Estate of Julia Taschereau"
whenever it was convenient for Defendants (as on August 4,
2009, the first day of the trial without a jury). The
switch from title to title assured Plaintiff that the
filing for Probate in Manhattan Surrogate Court of the
original Will of Julia Taschereau would be contrary to law,
at the discretion of Defendant Roth, Spitzer, Cuomo, and
the rest of the Defendants.

In the Surrogate Court Probate Proceedings of the Will of
Julia Taschereau the law that was and is ignored by
Defendants is the Surrogate Court Procedure Act ("SCPA").
An example is the following:

Wasserman's unverified "Objections To Probate" have no
value other than to prove the RICO complained about herein.
Every Defendant named in this case knew that the Surrogate
Court could take no jurisdiction over the Objections to the
Will of Julia Taschereau based upon the unfounded,
meritless paper submitted by Wasserman. (SAC). Yet not one
of the Defendants ever tried to re-write or verify the
Objections until "forced" to have an unconstitutional trial
without a jury August 4 – September 15, 2009, and Wasserman
was told to have Danger "verify" the Objections she

14

testified were untrue, nine years too late and subject to
laches.

As previously stated herein, at the insistence of her
Attorneys Uncyk, Kofsky, and Landsman, Plaintiff relied
upon the validity of the valueless paper until she ended up
in Lenox Hill Hospital on July 22, 2006, almost dead of
heart failure.

Upon admission to the hospital, Plaintiff was able to
describe the trauma she experienced pursuant to the order
of Judge Roth about an hour earlier that same morning.
(Exhibit 7, a few pages from Plaintiff's Lenox Hill
Hospital records for July 22-24, 2006). But that's not all
that makes the Wasserman/Danger Objections worthless, and
all the Defendants knew this before Plaintiff did, when she
started her own investigation in July 2006: the entire case
against probate as presented by Wasserman/Danger and all
the Defendants is based on baseless unproven accusations
(that Julia Taschereau was a weak, mentally incompetent
person, susceptible to the overbearing and malicious acts
of Plaintiff). Defendants never would allow Plaintiff to
defend herself and present the false claims. See
Wasserman's responses to Plaintiff's Bill of Particulars,
Exhibit 8; not one single document has ever been presented
to prove any of the claims and conclusions made by

Wasserman; Danger testified under oath at her deposition

that the claims made in the Objections were not true;

neither Danger nor Wasserman ever filed a petition for

jurisdiction; and the 1404 depositions invalidate

everything that Wasserman has submitted in the past twelve

years. This is a violation of SCPA §207.9(a):

"A person not named in citation, but who claims to be
interested in the proceeding and wishes to intervene
therein shall file a notice of appearance and a petition or
affidavit alleging interest."

And then there is SCPA §207.23 Bills of Particulars:

"(a) in any probate proceeding in which the execution of
the propounded instrument was procured by fraud or undue
influence and the proponent demands or moves for a bill of
particulars, the proponent shall be entitled as of course
to the following information:
    (1)   the specific act or acts or course of conduct
          alleged to have constituted and effected such undue
          influence; the person or persons charged therewith
          and the time or times and place or places where it
          is alleged to have taken place;"
(from Uniform Rules For Surrogate's Court)

Defendants never bothered to try to prove their false

claims and conclusions against Plaintiff, and this was

allowed by the co-conspirators, the Defendants in this

case, including the State Actors represented by Andrew

Cuomo's office. It is reasonable to conclude that taxpayers

and voters of New York State will have a negative opinion

of Andrew Cuomo for his support of fraud and corruption in

the Manhattan Surrogate Court and at MAPC.

16

Indeed, in Mark's Opposition To Plaintiff's Request For
Default Judgment he insists that he has never done anything
wrong, and it is Plaintiff who should be punished for
following the F.R.C.P. and basing her claim to a default
judgment despite Judge Frank Maas "prohibiting" it.
Plaintiff, on the other hand, was prepared to go to trial
in 2001 and prove that she took care of her mother while
Julia Danger physically abused their mom to the extent that
she was hospitalized on July 25, 1997. Taschereau knew that
both her daughters would be given this money, but she did
not want Julia Danger to get any part of her apartment due
to the abuse she suffered. Almost one month before Julia
Taschereau signed her new Will, she wrote the Co-op Board
President of her apartment and told him that she wanted her
daughter Elizabeth Combier to be a "joint tenant". (Exhibit
5). Plaintiff knew nothing of this until after her mother's
death, when a copy of this letter was found, and the
original was given to her by the Board.

11. Wasserman, Uncyk, Kofsky and Landsman made sure that
the Surrogate Court records room at 31 Chambers Street in
New York City never had any records of the Probate
Proceedings of the Will of Julia Taschereau, as any good
researcher would notice the signed 1404 depositions of all
the witnesses, completed by 2001, and the unverified piece

17

of paper saying there were "Objections To Probate" written by Wasserman in February 2000 and not verified until the first day of the trial without a jury held before Defendant Webber on August 4, 2009. These unverified Objections never gave jurisdiction to Judge Roth to pursue justifying the invalidation of the Taschereau Will, but all Defendants believed that Plaintiff would never find out this basic, fundamental crime. As stated in her earlier papers filed with this court, these Objections and the rules of Surrogate Court Procedure were told to her by her attorneys from 2000-2006 and were relied on by Plaintiff as she paid hundreds of thousands of dollars to seek Probate of her mother's Will.

12. Mark states that he was never served, yet submitted his "Opposition To Motion For Default Judgment" with Exhibits taken from Plaintiff's complaint (Mark, Opposition papers, Exhibits). His assertion that any papers at any time were delivered to "21 Quaker Ridge Road" is absurd. The proof of delivery of all papers, (all mailings have delivery confirmation) as well as the certified service of process filed in this Court on August 27, 2009, are proof positive that Mark is grabbing at falsehoods to further obstruct justice and harm Plaintiff. He was served the Summons and Complaint. The Court may wonder, as did Plaintiff, how Mark

18

could insist that he never received the Complaint (yet a
bonded process server individual filed a notarized document
saying service was provided) and, filed his papers with the
very same exhibits that were in the papers he "never
received", the Summons and Complaint. This Court must find
this incredible.

Mark perjures himself in paragraph 15 of his Opposition
papers. When Plaintiff visited Mark's house in November
2005, she asked for the property, especially the framed
original piece of music from Arturo Toscanini. Mark grabbed
this priceless property from her hand, and his wife Martha
ran into the house from the garage, saying words to the
effect that "Oh my, we have something valuable here, and
must put it into the house." Plaintiff has a witness to
this act. Subsequently, Plaintiff and a witness went to the
Mark's house with a Citation, to get the property, as
administrator, so that it could be stored safely and
appraised. Mark assaulted Plaintiff and her witness, and
told her that she would be arrested for trespassing if she
ever put her foot on his property again.

13. Mark requests that this Court ignore the "lateness" of
his papers. Plaintiff requests that this Court deny any
excuses of Mark or any Defendants, all of whom have
prevented the Probate of the Will of Julia Taschereau for

twelve years. Plaintiff was not aware that the Defendants would never let the Will be probated, nor will she accept any excuse for the further obstruction of justice that has harmed her and her family permanently without justification or reason.

WHEREFORE, plaintiff will move this Court before the Honorable Judge Richard J. Holwell to Order a Default Judgment against Defendant Lawrence Mark, and sanction him for his perjury, theft, and negligence of the Taschereau property.

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated: New York, NY
May 21, 2010

Elizabeth Combier
315 East 65th Street
New York, NY 10065
212-794-8902

Copies sent by mail to:
Jeffery H. Sheetz
Greenfield, Stein & Senior, LLP
600 Third Avenue
11th Floor
New York , NY 10016

Monica Connell
Office of
Attorney General of the State of New York
120 Broadway, 24th fl.
New York, NY 10271

Kenneth Wasserman
350 Fifth Avenue Suite 4810
New York, NY 10118

Eli Uncyk and Jeffrey Kofsky

555 Fifth Avenue, 18th fl
New York, NY 10017

Julia Danger
47, Avenue Mathurin Moreau
Paris, France 75019

Lawrence Mark
2110 Quaker Ridge Road
Croton-on-Hudson NY 10520

Francesca Sabadie
1 Walworth Avenue
Scarsdale, NY 10583

Carl J. Schaerf
Schnader Harrison Segal & Lewis LLP
Attorney for Guide One Insurance Company and Dr. Fred
Anderson (not noticed)
140 Broadway, Suite 3100
New York, NY 10005-1101

Jonathan Landsman
260 Madison Avenue
New York, NY 10016

Courtesy Copy to:
Magistrate Judge Frank Maas
500 Pearl Street
New York, NY 10004

# EXHIBIT 1

*David Johnson, CEO of
Trustee of the Preservation Group
Marc and the Preservation Group
Has this essay on the website
Nov 21 2005*

Return to Article | Print this Page

# Preservation Group LLC

## Chin '04

September 19, 2003

It is rare moment when a solution emerges that can address several large-scale problems simultaneously. If current trends remain intact, the Democratic Party is likely to amass hundreds of Presidential candidates before next November with a high probability that not one of them will have a clue as to the nature of or remedies for our nation's long-term challenges. The one man who can solve their dilemma and similar problems facing many states is, as luck would have it, already housed in a Federal facility. His name is Vincenzo 'Vincent' Gigante, better known as Chin.

Born in New York in 1928, he rose through the ranks of the Genovese Organization to become CEO in about 1970. Displaying the sort of restraint that we so miss in our present day CEOs, there was no Gulfstream, no corner office on Park Ave., no Ferrari SUV, no castle in Aspen and no endless river of stock options. Instead, he was content to wander the streets of Greenwich Village in a blue bathrobe and striped pajamas, mumbling quietly to himself and the occasional passer by.

This low key personal style anticipated today's growing vision of leaders as humble men and women of the people, stripped of the vivid arrogance that had become the fashion among the elite in political, corporate, academic and cultural affairs. Chin's more subtle approach was no barrier to results. Here is a man who could get things done and done quickly.

With the income from gambling, tobacco, alcohol and 'settlements' representing the fastest growing revenue source among state and local governments, and with union wage and benefit negotiations dominating the expenditure outlook, there is a clear need for a professional with real experience to manage these processes. Who better than Chin to assure that as the country is blanketed with 'Native American' casinos and state run video poker and lottery parlors, government gets the proper "piece of the action" and that everyone sticks to their assigned territory. If Internet gaming poses a threat to government revenues, the answer will not be found in legislation, but in a few quiet talks among the owners of these sites and Mr. Gigante's close advisors. Surely an accommodation can be reached where the interests of both parties can be served by a reasonable split of revenues. The same could hold true for adult sites, liquor distribution, pharmaceutical sales and the other main Internet cash generators. Just a few diplomatic words along the lines of "this is a nice little business, shame if anything happened to it" would have much greater practical effect than fifty hours of braying by John Kerry or Howard Dean.

The weak points of the tobacco 'settlement' provide a good example of the need for professional oversight. Despite the expertise of the tort bar in the basics of extracting cash for protection or the withdrawal of threat, their ability to construct mechanisms that will keep the cash cows alive while they take the milk is suspect. In painting the industry as the incarnation of evil and maintaining that their sole purpose in bringing suit was to end smoking as we know it, the plaintiffs' attorneys and the governments that were their main clients set up a mechanism whereby the golden goose could actually be done in. Punitive taxation and draconian restrictions on smoking in public and private venues are combining to diminish cigarette use. Revenues are threatened, and with them the futures of more than a few states. Competition from new manufacturers and untaxed outlets looms in the distance.

How much nicer to have had one brief gathering of leaders in the tobacco industry, where just one simple question might have been posed—"You gonna pay up, right?" Think of the benefits in avoiding years of litigation and the constant burden of reminding all of us that this whole effort was undertaken for the public good. Potential competitors and those tempted to avoid proper revenue sharing would think twice before threatening the solvency of our governments. Municipal bond investors could sleep soundly.

With leadership that mumbled softly and carried a big stick, politicians in second rate countries would gain new respect for the U.S. One quick tour of the New Jersey Meadowlands (less than one hour by cement mixer from the U.N.) would be more than sufficient to change the tone of anti-American rhetoric. So many problems, one solution…

Chin '04.

netsential
website developers

LENOX HILL HOSPITAL

COMBIER, ELIZABETH        DR.RUDEN,R.        101179458-731474
Gender      : Female
Age         : 57
Birth Date  : 07/11/1949
Disposition : Home, Self Care (1)
Admit Date  : 07/22/2006
LOS         : 2
Disch Date  : 07/24/2006

## AP DRGs (NY) DRG

**139**    CARDIAC ARRHYTHMIA & CONDUCTION DISORDERS W/O CC

S.I. wt 0.7353        Mean LOS  5  Low Trim  2  High Trim  17

## Principal Diagnosis

**\*4270**    PAROXYSMAL SUPRAVENTRICULAR TACHYCARDIA

## Secondary Diagnoses

**7802**    SYNCOPE AND COLLAPSE
**4240**    MITRAL VALVE DISORDER
**7804**    DIZZINESS AND GIDDINESS
**78605**   SHORTNESS OF BREATH
**7840**    HEADACHE (FACIAL PAIN)

I certify that the narrative descriptions of the principal
and secondary diagnoses and the major procedures performed
are accurate and complete to the best of my knowledge.

_____                Date
Physician's Signature

# EXHIBIT 2

UNCYK, BORENKIND & NADLER, L.L.P.

COUNSELORS AT LAW

114 WEST 47TH STREET, NEW YORK, NEW YORK 10036-8401

(212) 575-1292          TELECOPIER (212) 768-4469

ELI UNCYK
ALAN BORENKIND
MYRON R. NADLER

JEFFREY S. KOFSKY
RONIT HAVIV

OF COUNSEL

NORMAN R. BERKOWITZ
JAN KLEEMAN

February 22, 2000

Ms. Betsy Combier
315 East 65th Street, #4C
New York, New York  10021

Re:   Will of Taschereau

Dear Betsy:

Enclosed, for your information, is a copy of Objections to Probate, which have been served on us.   There is nothing new or unexpected in this matter.

We will discuss our next step when we meet.

Sincerely,

Eli Uncyk

EU:ca