UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/21/10
```

—————————————————————————————————————x

ELIZABETH COMBIER,

                       Plaintiff            DOCKET NO. 09 CIV 5314 (RJH)(FM)

     -against-                     **REPLY AFFIRMATION
IN SUPPORT OF MOTION
TO SANCTION**

THE STATE OF NEW YORK, ET AL.,       **DEFENDANT LAWRENCE MARK
AND GRANT PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT**

                     Defendants

—————————————————————————————————————x

PRO SE OFFICE

State of New York   )
                  ) ss.:
County of New York )

Plaintiff Elizabeth Combier, proceeding pro se, hereby affirms **under penalty of perjury that:**

1.I, Elizabeth Combier, am the Plaintiff Pro Se in the above entitled action, and submit this affirmation in further support of my motion to this Court for an order sanctioning Defendant Lawrence Mark and granting my Motion For Default Judgment pursuant to Federal Rules of Civil Procedure.

2.The reason why I am entitled to the relief I seek is the following:

(a) Defendant Lawrence Mark ("Mark") is once again committing perjury with malice and in bad faith in his "Affidavit in Opposition To Combier's Motion For Sanctions And A Default Judgment Against Mark" to which this Reply is submitted to this Court. All of Plaintiff's claims for relief in her previously submitted Motion are hereby incorporated.

1

In paragraph #2 of Mark's Affidavit ("Mark Aff") he claims once again to not being served the summons and complaint, clearly a lie. EXHIBIT 1 is the official notarized Affidavit of Service of Mr. Steven D'Ilauria of Action Subpoena, a bonded process server company hired by me to serve both Mr. Lawrence Mark and Ms Francesca Sabadie. Plaintiff found this company through a lawyer friend who lives in Westchester, and paid more than $300 for their service. The Affidavit of Service of the Amended Summons and Complaint was filed in this Court in August 2009 (see DOCKET for this case). Mark is asking this Court to rule that this Company and this Plaintiff lied in order that his need to justify his default in this matter be satisfied. If this Court refuses to honor the Affidavit of Service submitted by Action Subpoena in order to provide Mark his badly needed justification for his default, this would be unreasonable, prejudicial, a violation of my due process rights and a further obstruction of justice in this matter, now in its twelfth year.

(b) Mark has a copy of the Will of Julia Taschereau. He knows that the 1997 Will was never declared invalid, nor could it be, because Plaintiff discussed this with him in 2001;

(c) Mark knows that the spurious conclusions in Defendant Kenneth T. Wasserman's ("Wasserman") unverified Objections To Probate, Bill of Particulars and Interrogatories do not give jurisdiction to the Surrogate Court to oversee the invalidation of this Will, even if this were possible, which it is not;

(d) Mark has copies of the January 2, 2007 tape and the transcript showing that Detective Ahearne at the 19th Precinct of the New York City Police Department heard from New York State (now Appellate Division, First Department) Judge Karla Moskowitz and her law clerk Defendant Eric Reese that both Moskowitz and Reese were paying Wasserman to harass Plaintiff, a crime in any state and certainly in the United States of America;

(e) after the Amended Summons and Complaint were served on Mark, all paper, exhibits and letters were mailed to Mark by this Plaintiff, and every piece of mail was confirmed as delivered to Mark by the U.S. Postal Service.

(f) Mark admits having received the Complaints in this lawsuit, in his paragraph #4: "Ms. Combier suggests that the mere fact that I possess the Complaints in this lawsuit means that I was validly and legally served." This statement reaches to the core of this matter, as we see how Mark and all the Defendants try their very best to make a fact into a fragment of Plaintiff's imagination. The insinuation is that Plaintiff cannot be credible about anything, and for this reason Plaintiff has taped everyone she has spoken with for more than 7 years. Even if Mark has been misled for twelve years by the other Defendants into thinking that he would never be held accountable for his larceny and perjury, he is responsible for at least, if nothing else, negligence, theft, and joining with the other Defendants to obtain property that is not his to have. He chose to leave most of the property from Julia Taschereau's Estate sitting in his garage, unprotected, while he, Wasserman and the other Defendants in this matter removed what they wanted and allowed the rest to disintegrate. Perhaps the music box from the 19th century has been sold or destroyed by the conditions in Mark's garage. When Plaintiff visited Mark's garage in November 2005 and took pictures of the property stored there, the music box worked beautifully. Plaintiff also saw and took a picture of the priceless Toscanini music given to Plaintiff's mother by Toscanini himself. Plaintiff was going to get this item appraised but Mark grabbed the frame out of her hand, gave it to his late wife Martha, who ran into the house with it. Indeed, Mark threatened Plaintiff and her witness when she requested this item back, as it is very valuable. Please take notice of the fact that on

March 5, 2010, at 4:30PM, in the presence of another person, Plaintiff called Mark and spoke to him about when he received the Summons and Complaint and why he never answered. He told Plaintiff during this telephone call that he had received the papers but "didn't open them", and that he wanted to come to court to testify about his receipt of the papers. Mark should not be allowed to continue to commit perjury.

(g) paragraph #3 is also outrageous, in that Mark continues to claim that during Plaintiff's "eight years as the Estate's Administrator [she] accepted the free storage in my garage and failed to make other arrangements or to finalize her mother's Estate". From 2000 to 2006 Plaintiff relied on the New York State Surrogate and Supreme Courts as well as Attorneys, Eli Uncyk, Jeffrey Kofsky, and Jonathan Landsman to provide the proper legal representation that would lead to a trial and/or to probate of the 1997 Will of Julia Taschereau, filed properly in New York Surrogate Court on March 17, 1998. From 2003 to 2006 Plaintiff was lied to by these officers of the court, screamed at over the telephone and in person that [I] would never get anything unless [I] gave my sister $300,000+, all my money was taken from me and Plaintiff almost died so that Defendants could enjoy the bounty from my mother's apartment without any law or contract to do so. While Defendant Roth was the Surrogate Court Judge, no record of any hearing held before her can be found. Roth never had a court reporter or a tape machine in her Courtroom, except for the Probate Proceeding of Julia Taschereau after July 2006, when she honored my request for a reporter. Plaintiff has already submitted to this Court Roth's denial of my rights because "[her] court didn't do things that way." Plaintiff has never been allowed to present her facts in this matter and has never been allowed to present evidence of her sister's beating and physical harm of their mother, why the Will must be probated and she

insists that the New York State Defendants must be held accountable for violations of

due process. See the Matter of the Application of Albert A. D'Agostino v Thomas P. Di

Napoli et al., EXHIBIT 2.

(h) Mark suggests that he is under Court order to hold the Estate of Julia Taschereau

away from Plaintiff, her daughter to whom the property was bequeathed, because [I] am

no longer the Estate's Administrator. (paragraph #3).  This is the most important cause of

action in the case, why I am not the Administrator, despite being given Temporary

Letters in 1998 by the current Surrogate Judge Nora Anderson. Mark's statement is also

evidence of his capricious disregard for the fact that Plaintiff tried to get the property

back for eight years while Administrator, and almost died pursuing this goal. When

Plaintiff visited Mark after getting the citation in 2006, Mark assaulted her and the person

with her who served the Citation.

3. Mark is a very important member of the conspiracy to harm Plaintiff powered by the

malice and bad faith of Guide One Insurance Company and  Dr. Fred Anderson

("Anderson") and the other Defendants starting in or about 1994.

In 1994 the African-American porters who worked at Madison Avenue Presbyterian

Church ("MAPC") and other members of Local 32 B&J were being harassed out of the

building by Anderson and his administrative assistants (the Trustees and Session).  The

anti-Union actions of Anderson compelled Plaintiff to start her campaign to protect

labor's interests as well as the rights of the members of Local 32 B&J at MAPC.

Plaintiff's mother, Julia Taschereau, worked as a volunteer on the 7th floor of MAPC for

more than forty years, and both she and Plaintiff were close allies of the Union members

that worked at MAPC, much to the dismay of Anderson. Plaintiff's four children went to

the nursery school on the 9th floor of the church building, and Plaintiff taught Sunday

school there as well as attended Sunday services, so Plaintiff was there almost every day.

The Union members would secretly speak with Plaintiff whenever they knew that

Anderson was out of the building, especially after 1995, when Anderson started

terminating the union porters. The porters were told to never talk with Plaintiff, as were

the Session members. But they all secretly talked with Plaintiff anyway, and continue to

do so. For example, one source in 2005 told Plaintiff that the Session and Trustees were

paying triple the costs for repairs to the Church building and sanctuary in order to give

kickbacks to the construction company, Prudon and Partners. Mr. Prudon teaches at

Columbia University, where sources have kept me up to date on his scam. Also in 2005

Plaintiff, an investigative reporter, found evidence of Vincent "the chin" Gigante's

involvement with the financing of expensive real estate in New York City using MAPC

property as collateral. Gregory Maundas, the lawyer who wrote the financing agreement

for Mr. Sandeep Mathrani and his wife, was suddenly moved to the Dallas Office of

Proskauer Rose soon after Plaintiff called him up to discuss the financial documents

found at the Department of Buildings. (EXHIBIT 3)

In the 1990's the MAPC Local 32 B&J Shop steward was, for many years, John Vanos.

His wife Mary worked in the basement kitchen and their son Scott worked as a

porter/maintenance worker. When John died suddenly of a heart attack Scott became

shop steward, and the fights began between him and Anderson. Scott Vanos was finally

fired by Head of Maintenance Fred Lindstedt in 1996, and Plaintiff found him a job as

the doorman of her apartment building where he worked for more than three years. By all

accounts Anderson despised Scott Vanos and Plaintiff for attempting to stop him from

getting rid of the Union at MAPC. But Anderson would not – could not – get rid of

Plaintiff until Julia Taschereau, beloved volunteer, either died or became incapacitated

(Anderson deposition, ashes case, 2001)

On March 16, 1998, Plaintiff called Assistant Pastor Charles Amstein and told him that

her mother had died over night. He immediately went to the Taschereau apartment and

told Plaintiff that she had to cremate her mother, and he would take care of the cremation

and the apartment. Plaintiff informed him that Julia Taschereau had prepared a new Will

the previous November. He returned to the Church and contacted Defendants Guide One

Insurance, Anderson and then Kenneth T. Wasserman, who was brought in to steal the

property from Plaintiff that was left to Plaintiff in the 1997 Will of her mother, Julia

Taschereau. Ten days after the death of her mother, Plaintiff was thrown out of MAPC,

and her mother's ashes were withheld from her by Charles Amstein. Wasserman filed a

fake action in New York State Supreme Court in 1998, *Danger v Combier*,  saying that

Plaintiff had stolen money from the Samuel Strauss Trust at Banker's Trust (but never

named Banker's Trust as a party) and this started the 9-year battle to stop him in that

matter (finally successful on October 1, 2009 in the First Department). Upon information

and belief your Honor, Judge Richard Holwell, was the Attorney at White and Case who

had Bankers Trust as his client during this period of time, and also worked on the

Departmental Discipline committee to which Plaintiff wrote a complaint about

Wasserman in 2004.

4. Since July 2006 Plaintiff has investigated all the Defendants named in this case,

spoken with the FBI, the Manhattan District Attorney, and Senators in New York State as

well as Washington DC. The day after Plaintiff taped Wasserman and Ahearne (Jan. 2,

2007 conversation about Moskowitz and Reece, submitted in audio file and transcript to this Court) she accepted a job working at Sheinkopf Communications with Hank Sheinkopf in order to get her information through to Robert Morganthau. On April 24, 2007, Plaintiff arranged for Hank Sheinkopf and Assistant DA Eban Bronfman to have lunch with Mr. Morganthau, and she prepared a package with the tape of the conversation and copies of all the documents that have been submitted to this court. Plaintiff has reported Guide One Insurance Company to the Department of State, and has done her best to show this Court the process by which the Defendants in this case conspired together, unlawfully, to steal the Taschereau Estate from the legal owner, Plaintiff Elizabeth Combier. None of the statements made by Plaintiff in this matter have been simply conclusions, and all are supported by years of due diligence investigation and reporting.

**WHEREFORE,** I respectfully request that the Court grant my motion, as well as such other and further relief as may be just and proper.

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated: New York, New York
      June 21, 2010

315 East 65th Street
New York, NY 10065
212-794-8902

8

# Exhibit 1

In The United States District Court
The State Of New York
Southern District Of New York

| | |
|---|---|
| **Elizabeth Combier** | AFFIDAVIT OF SERVICE |
| Plaintiff | Documents Served: |
| vs. | Amended Summons and |
| **The State of New York, et al.** | Amended Complaint |
| Defendant | |

The undersigned hereby declares: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

## POSTED

On the 24th of August  2009  at address of **2110 Quaker Ridge Rd, Croton On the Hudson, NY 10520** at **11:10am** this declarant served the above described documents upon **Lawrence Mark**, by affixing a true copy thereof to the door of the above address; said address being the usual place of abode of the defendant.

The deponent was unable with due diligence to find the respondent or a person of suitable age and discretion thereat.
Due Diligence;
8/20/2009 at 9:50pm No Answer
8/21/2009 at 7:45am  No Answer
8/22/2009 at 10:50am No Answer

A neighbor confirmed by postman.

Military Status:  _____ in military  ___**X**_ not in military

The Deponent enclosed a true copy of same in properly addressed to the defendant/respondent at the defendant's respondent's actual place of residence as listed above and mailed by first class, said documents in a post office or official depository under exclusive care and custody of the United States Postal Service within the state of New York. The envelope did not indicate that the communication was from an attorney and was marked Personal and Confidential.

Declarant hereby states under penalty of perjury under the laws of the State of **New York** that the statement above is true and correct.

DATED this **Monday, August 24, 2009**

**Steven DiMuria**

SUBSCRIBED AND SWORN to before me the **Monday, August 24, 2009**

Gail Kagan
Notary Public in the State of New York
Qualified in the County of Westchester
Commission Expires June 23rd 2011
Reg# 01KA6094470

# ServeNow

- Home
- Search
- Resources
- ServeManager™

- FAQs
- About ServeNow.com
- Contact ServeNow.com

Bookmark

Process Servers » Action Subpoena

## Action Subpoena

- **Contact:**

  Gail Marie

- **Phone:**

  (914) 963-1941

- **Fax:**

  (914) 963-0530

- **Address:**

  463 Livingston Street, Ste. 102-41
  Norwood, NJ 07648

- **In Business Since:**

  2005

Email Website Assign with ServeManager



Call us (914) 963-1941

# Exhibit 2

STATE OF NEW YORK
SUPREME COURT       COUNTY OF ALBANY
_____

In the Matter of the Application of
ALBERT A. D'AGOSTINO,

                               Petitioner,

For a Judgment Pursuant to Article 78
of the Civil Practice Law and Rules.

      -against-

THOMAS P. DINAPOLI, in his capacities as the
COMPTROLLER OF THE STATE OF NEW YORK, and the
administrative head of the NEW YORK STATE AND LOCAL
EMPLOYEES' RETIREMENT SYSTEM, the OFFICE OF
THE COMPTROLLER OF THE STATE OF NEW YORK and
the NEW YORK STATE AND LOCAL EMPLOYEES'
RETIREMENT SYSTEM,

                               Respondents.
_____

Supreme Court Albany County Special Term
Hon. Gerald W. Connolly, Acting Supreme Court Justice Presiding
RJI # 01-08-ST9395   Index No. 8134-08

Appearances:

Roemer Wallens & Mineaux, LLP      DeGraff, Foy & Kunz LLP
Attorneys for Petitioner            Co-Attorneys for Petitioner
13 Columbia Circle               90 State Street, Suite 1100
Albany, New York 12203         Albany, New York 12207
(James W. Roemer, Jr. and       (David F. Kunz and
Earl T. Redding, Esqs.)          George J. Szary, Esqs.)

Andrew M. Cuomo
Attorney General, State of New York
Attorney for Respondent
The Capitol
Albany, New York 12224
(Douglas J. Goglia, Esq.,
Assistant Attorney General)

**DECISION/ORDER**

Connolly, J.

The instant article 78 proceeding challenges respondents' letter determination dated
August 19, 2008 which terminated petitioner's pension benefits and his membership in the New
York State and Local Retirement System. It further required petitioner to return six years of
benefits amounting to $605,874.79 within 30 days. By prior decision and order, respondents'
motion to dismiss for failure to state a cause of action was granted in part and denied with respect
to claims that the procedures applied to petitioner violated his rights to due process. The
remaining portions of the proceeding have been re-noticed and are now before the Court on the
merits.

Petitioner had maintained part time "employment" with various public agencies,
including three school districts, the County of Nassau, the Town of Hempstead and the Village of
Valley Stream, while also maintaining a private law practice. The respondent Comptroller's
predecessors and the retirement system specifically determined that he was an employee and not
an independent contractor following reviews by high level retirement system examiners.
Petitioner thereafter retired and began receiving benefits in 2000.

By letter dated April 23, 2008, respondents suspended petitioner's pension payments in
which he had a constitutionally protected property interest. The letter stated that the
determination was based upon a preliminary review of respondents' records and that an
investigation was required of the circumstances under which petitioner received service credit.
By letter dated June 27, 2008 respondents made a preliminary determination that petitioner "was
registered as an employee when, in fact, [he was] an independent contractor." The letter stated
only that such determination was based upon retirement system records, records provided by the

2

employer and other unspecified documentation. Such letter gave petitioner 15 days to submit

information in support of retaining petitioner's service credit and benefits. Respondents' return

establishes that the determination was based upon investigations conducted by employees of the

Office of the State Comptroller who had no experience or expertise with respect to the retirement

system or the issue of whether an individual is an employee or an independent contractor. It

further appears that much of their investigation involved interviewing people who had no

personal knowledge of the specifics of petitioner's employment history. The final determination

letter of August 19, 2008 stated that, based upon a review of petitioner's relationship with the

three school districts and the county, including the information provided by petitioner, it was

determined that petitioner was an independent contractor rather than an employee.

Respondents contend that the letter set forth the grounds for the determination; that is,

that petitioner was an independent contractor rather than an employee. However, it is clear that

this constituted the ultimate conclusion and finding, rather than the factual basis for the

determination. No other factual basis or reasoning for the change is provided, notwithstanding

the fact that the determination is contrary to longstanding administrative policy and previous

specific factual findings (see Matter of Charles A. Field Delivery Serv., Inc., 66 NY2d 516, 516-

517 [1985]).

The portions of the petition which survived the motion to dismiss allege that the

procedures followed violate petitioner's due process right to a pre-deprivation hearing and that

petitioner was not provided with adequate notice of the basis for respondents' charges. Petitioner

seeks to revive claims of violations of the New York State Constitution, article V, section 7, and

to allege the retroactive application of new policies, practices and procedures which diminish

3

plaintiffs' benefits.  The request is based upon the return, which indicates that respondents relied

upon recently promulgated regulations at 2 NYCRR § 315.3, which created a presumption that

certain part time professionals are independent contractors rather than employees and arguably

changed the standards for making a determination on such issue.  However, the prior motion to

dismiss such claim was granted and the issue is no longer before the Court.

The Petition alleges that the summary termination of benefits and removal from the

retirement system violates the fifth and fourteenth amendments of the United States Constitution

by depriving petitioner of procedural due process.  Petitioner contends that a pre-termination

hearing is necessary to provide due process and that petitioner must be given adequate notice of

the claims against him.  In determining the extent of process which is due in any specific

situation, the Court must consider and weigh the nature of the private interest affected, the risk of

error under the challenged procedures compared with that of alternative procedures and the

interests of the government (see  Mathews v Eldridge, 424 US 319, 335 [1976]; Matter of

Uniform Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v City of Cohoes, 94 NY2d 686,

691 [2000]).

It appears that the risk of an erroneous temporary-deprivation if the hearing is not held

prior to such deprivation under these circumstances is relatively low.  The issues involved in the

question of whether petitioner was an employee or an independent contractor encompass

decades, with his public employment starting in 1972.  It is likely that a significant portion of the

evidence relevant to the issues will be documentary in nature.  Thus, a pre-deprivation hearing

which complies with all other due process requirements may not be necessary to prevent a

likelihood of an erroneous initial determination.  As such, this factor is neutral.

4

As noted in the prior decision, the petitioner has a significant property interest in his retirement system benefits and membership which is specifically protected by the New York State Constitution. It is likely that he has made financial plans and incurred expenses based upon the expectation of continued receipt of the benefits.

While the government has a strong interest in preventing erroneous payments, or in recouping them if made (see Matter of Schwartfigure v Hartnett, 83 NY2d 296, 300 [1994]), respondents have failed to submit any evidence showing a likelihood, or even a significant possibility, of difficulty in recouping payments made during the additional period required for a pre-deprivation hearing. Respondents have submitted only an affidavit from the Deputy Comptroller for the Division of Retirement Services containing an entirely conclusory statement that recoupment would be difficult, if not impossible. Respondents have also failed to make any showing that requiring a pre-deprivation hearing would impose any great burden on the government.

The Court finds that petitioner's significant private interests in continuing to receive his pension benefits outweigh the government's limited interest in effecting the deprivation prior to granting a hearing. It is therefore determined that due process requires that petitioner, who was already receiving retirement benefits, be provided a pre-deprivation hearing (see Lefford v McCall, 916 F Supp 150, 154 [1996]; Ortiz v Regan, 769 F Supp 570, 571 [1991]; Ortiz v Regan, 749 F Supp 1254, 1260 [1990]).

The petition alleges that petitioner was not given any notice of the factual or theoretical basis for respondents' determinations. Such allegations are fully supported by copies of the notices provided. While respondents' return shows that the determination was based upon

5

investigations performed by employees of the Office of the State Comptroller. the determination itself fails to indicate the facts or considerations upon which respondents relied in making such determination. Respondents contend that they gave petitioner sufficient notice by allowing him to pay for copies of his entire retirement system file, and further, that his detailed and voluminous written response establishes that he was able properly to respond to the charges. However, petitioner was not provided with copies of the investigation results upon which respondents relied until the answer was served in this proceeding.

Moreover, a review of his initial administrative submission indicates that he did not address many of the issues relied upon by respondents, including the ability properly to raise the claim that respondents were unconstitutionally relying upon new regulations altering the policies and procedures to be applied to a determination of employment status.

Due process requires meaningful notice of the nature of the charges and evidence against petitioner as well as a statement of the legal basis for the charges in order to allow petitioner adequately to respond to and rebut respondents' claims (see Gray Panthers v Schweiker, 652 F 2d 146, 168-169 [1980]; Escalera v New York City Hous. Auth., 425 F 2d 853, 862 [1970]; Matter of Alvarado v State of N.Y., Dept. of State, Div. of State Athletic Commn., 110 AD2d 583, 584 [1st Dept., 1985]; Butler v Wing, 177 Misc 2d 779, 790-791 [Sup Ct, New York County 1998] revd on other grounds 275 AD2d 273 [1st Dept., 2000]). Respondents failed to provide such notice.

It is therefore determined that respondents violated petitioner's right to procedural due process by depriving him of continuing retirement benefits prior to granting him a hearing and by failing to provide adequate notice of the nature of and factual basis for the claims against him.

6

Accordingly, it is

**ORDERED**, that the petition is hereby granted, and it is further,

**ORDERED**, that the determination to terminate petitioner's pension benefits and his membership in the New York State and Local Retirement System is vacated and annulled, and it is further

**ORDERED**, that the respondents are directed to pay accrued arrears in petitioner's pension within 30 days of service of a copy of this decision and order, together with notice of entry, and it is further

**ORDERED**, that such payments shall be subject to recoupment in the event petitioner's pension benefits and membership are properly terminated in the future.

This constitutes the decision and order of the Court. The original decision and order are being returned to the attorneys for the petitioner. A copy of this decision and order and all other original papers are being delivered to the Albany County Clerk's Office. The signing of this decision and order and delivery of a copy of the decision and order shall not constitute entry or filing under CPLR § 2220. Counsel is not relieved from the applicable provisions of that rule respecting filing, entry and notice of entry.

SO ORDERED.
ENTER.

Dated: August 20 , 2009
Albany, New York

Hon. Gerald W. Connolly
Acting Supreme Court Justice

7

# Exhibit 3

**UCC FINANCING STATEMENT COOPERATIVE ADDENDUM**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME + PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

2002 JUL -5 AH 10: 58

02PN14252

CITY REGISTER N.Y. COUNTY

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 19. Complete EITHER 19a or 19b | 19a. ☒ This COOPERATIVE ADDENDUM accompanies a FINANCING STATEMENT. | 19b. File Number assigned to the Initial FINANCING STATEMENT: |
|---|---|---|

**20. ORGANIZATION'S NAME:**
20a. ORGANIZATION'S NAME:

| 20b. INDIVIDUAL'S LAST NAME: | FIRST NAME: | MIDDLE NAME: | SUFFIX: |
|---|---|---|---|
| Mathrani | Sandeep | | |

**21. FIRST SECURED PARTY OF RECORD: (Complete either 21a or 21b, but not both.)**
21a. ORGANIZATION'S NAME:
Vornado Realty Trust

| 21b. INDIVIDUAL'S LAST NAME: | FIRST NAME: | MIDDLE NAME: | SUFFIX: |
|---|---|---|---|

**22. This COOPERATIVE ADDENDUM covers: (Check one.)**
☒ One COOPERATIVE INTEREST  ☐ More than one COOPERATIVE INTEREST

| 23. Unit uses: (Check all that apply.) |
|---|
| ☒ Residential  ☐ Commercial  ☐ Parking |
| ☐ Storage  ☐ Other (If checked, complete 23a) |

23a. Specify other Unit use(s):

**IMPORTANT:**

This COOPERATIVE ADDENDUM is for use when the collateral includes a COOPERATIVE INTEREST.

Only as to collateral which is a COOPERATIVE INTEREST, but not as to other collateral, the initial FINANCING STATEMENT to which this COOPERATIVE ADDENDUM relates shall be effective for 50 years from the date of filing the initial FINANCING STATEMENT.

**24. COOPERATIVE UNIT REAL PROPERTY FILING DATA:**

24a. ADDRESS NUMBER and STREET: (One only)
35 East 73rd Street

24b. COMMUNITY (e.g., City, Town, Village or Borough):
New York

24c. COUNTY:
New York

24d. DISTRICT:

24e. SECTION:

24f. BLOCK:
1388

24g. LOT:
21

24h. UNIT NUMBER(S) or DESIGNATION(S):
PHC

**25. Name of the COOPERATIVE ORGANIZATION:**
35 East 75th Street Corporation

25. Complete if applicable. (If checked, complete 25a.)
☐ The purpose of this COOPERATIVE ADDENDUM is to SUBORDINATE this security interest to another security interest in the same COOPERATIVE INTEREST.

25a. FILE NUMBER of security interest being given subordinated priority:

26. Check if Applicable.
☐ The security agreement provides for FUTURE ADVANCES.

26. MISCELLANEOUS:

NEW YORK UCC FINANCING STATEMENT COOPERATIVE ADDENDUM (FORM UCC1CAd) (REV. 6/14/01)

This is a true and correct copy of the original document recorded in the Office of the City Register of New York as attested by _Carolina McNeil_ on the 13th day of _April_, 20 05. (not valid unless signed and dated)

New York City Department of Finance
## Office of the City Register

HELP

[Click help for additional instructions]
Selecting a help option will open new
window

# Detailed Document Information

| | | | |
|---|---|---|---|
| **DOCUMENT ID:** FT_1590008415959 | | **CRFN:** | N/A |
| **# of PAGES:** 2 | | **REEL-PAGE:** | N/A-N/A |
| **DOC. TYPE:** INITIAL COOP UCC1 | | **FILE NUMBER:** | 02PN14252 |
| **DOC. DATE:** N/A | | **RECORDED / FILED:** | 6/5/2002 |
| | | **BOROUGH:** | MANHATTAN |
| **DOC. AMOUNT:** $0.00 | | **RPTT #:** | N/A |
| **MESSAGE:** N/A | | | |

## PARTY 1

| NAME | ADDRESS 1 | ADDRESS 2 | CITY | S |
|---|---|---|---|---|
| MATHRANI, AYESHA | 35 EAST 75TH STREET | | NY | |
| MATHRANI, SANDEEP | 35 EAST 75TH STREET | | NY | |

## PARTY 2

| NAME | ADDRESS 1 | ADDRESS 2 | CITY | S |
|---|---|---|---|---|
| VORNADO REALTY TRUST | 210 ROUTE 4 EAST | | PARAMUS | |

## PARTY 3

| NAME | ADDRESS 1 | ADDRESS 2 | CITY | S |
|---|---|---|---|---|

## PARCELS

| BOROUGH | BLOCK | LOT | PARTIAL | PROPERTY TYPE | EASEMENT | AIR RIGHTS | SUBTERRANEAN RIGHTS | PROPERTY ADDRESS |
|---|---|---|---|---|---|---|---|---|

New York City Department of Finance
## Office of the City Register



[Click help for additional instructions]
Selecting a help option will open new window

| Current Sear |
| --- |
| **Borough:** M/<br>NEW YORK |
| **Block:** 01388 |
| **Lot:** 0021 |
| **Date Range:**<br>years |
| **Document Cl**<br>**Document Cla** |

# Search Results By Parcel Identifier

records   previous   next
[Edit Current Search] [Print Index]

next previous **10**

Sort by: Grantor   Party / RFN Against

| View | Reel/Pg/File | CRFN | Lot | Partial | Recorded /<br>Filed | Document<br>Type | Pages | Party1 | Party2 | Party3 | More<br>Party<br>1/2<br>Names | Corrected/<br>Remarks |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| DET  IMG | 02PN14252 | | 21 | ENTIRE<br>LOT | 6/5/2002 | INITIAL<br>COOP<br>UCC1 | 2 | MATHRANI,<br>AYESHA | VORNADO<br>REALTY TRUST | | ✓ | |

| Search Options | New Parcel Identifier Search | Edit Current Search |
| --- | --- | --- |

Go To: <u>Finance Home Page</u> | <u>NYC.gov Home Page</u> | <u>Contact NYC.gov</u> | <u>FAQs</u> | <u>Privacy Statement</u> | <u>Site Map</u>

Poskauer Rose :
Gregory Moundas    (212)969-3202
1585 Broadway
   N Y N Y 10086 - 8299
CSC ID: 161015 NY - Secretary of State

ACRIS Detailed Document Information                                   Page 2 of 2



| MANHATTAN /<br>NEW YORK | 1388 | 21 | ENTIRE LOT | PRE-ACRIS | N | N | N | 921 MADISON<br>AVENUE |
|---|---|---|---|---|---|---|---|---|

**REFERENCES** | | | | | | **CHAIN** | | **REMARKS**

| CRFN | DOCUMENT<br>ID | BOROUGH | YEAR | REEL | PAGE | FILE NBR | |
|---|---|---|---|---|---|---|---|
| | FT_15900<br>08415959 | MANHATTAN | | | | 02PN14252 | |

[ Print ]          [ View Document ]          [ Search Results ]

Go To: Finance Home Page | NYC.gov Home Page | Contact NYC.gov | FAQs | Privacy Sta

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————————x

ELIZABETH COMBIER,

                          Plaintiff        DOCKET NO. 09 CIV 5314 (RJH)(FM)


          -against-
                                           **AFFIRMATION OF SERVICE**
THE STATE OF NEW YORK,  SUPREME COURT
OF THE STATE OF NEW YORK APPELLATE
DIVISION FIRST DEPARTMENT, HON, JOHN T.
BUCKLEY, in his individual and official capacity, HON.
KARLA MOSKOWITZ, in her individual and official
Capacity, ELIOT SPITZER, in his individual and official
Capacity, ERIC REISS, in his individual and official
Capacity,LAUREN HOLMES, in her individual and official
capacity, DAN RAMOS, in his individual and official
capacity, HON. JONATHAN LIPPMAN,
in his individual and official capacity as the former
Presiding Judge of the New York Supreme Court,
Appellate Division, First Department, HON RENEE
R. ROTH, in her individual and official capacity
as the former Manhattan Surrogate Court Judge,
HON. TROY WEBBER, in her individual and
official capacity, BARBARA LEVITAN, in her
individual and official capacity, MARY SANTAMARINA, Esq.,
in her individual and official capacity, ETHEL GRIFFIN,
in her individual and official capacity, PETER SCHRAM,
in his individual and official capacity, DR. FRED
ANDERSON, in his individual and professional capacity,
KENNETH WASSERMAN, in his official and individual
capacity, FRANCESCA SABADIE, individually,
LAWRENCE MARK, individually, JULIA DANGER,
individually, ELI UNCYK, in his individual and
professional capacity, JEFF KOFSKY, in his individual
and professional capacity, JONATHAN LANDSMAN, in his
individual and professional capacity, DOROTHY HENDERSON
in her individual and professional capacity, GUIDE ONE
INSURANCE COMPANY, PRESBYTERY OF NEW YORK CITY,

                       Defendants

———————————————————————————x

**I, Elizabeth Combier, affirm under penalty of perjury** that
I have served a copy of the Reply Affirmation In Support of
Motion To Sanction Defendant Lawrence Mark and Grant
Plaintiff's Motion For Default Judgment, and all exhibits,
upon the Attorneys and Defendants named in the caption at
the addresses listed below by First Class Mail sent from
the United States Post Office on June 21, 2010.

I declare under penalty of perjury that the foregoing is
true and correct.

Dated: New York, NY

     June 21, 2010
                    315 East 65th Street
                    New York, NY 10065
                    212-794-8902

Jeffery H. Sheetz
Greenfield, Stein & Senior, LLP
600 Third Avenue
11th Floor
New York , NY 10016

Kenneth Wasserman
350 Fifth Avenue Suite 4810
New York, NY 10118

Eli Uncyk and Jeffrey Kofsky
555 Fifth Avenue, 18th fl
New York, NY 10017

Monica Anne Connell
New York State Office of the Attorney General (24th Floor)
120 Broadway, 24th Floor
New York , NY 10271

Julia Danger
47 Avenue Mathurin Moreau
Paris France 75019

Lawrence Mark

2110 Quaker Ridge Road
Croton-on-Hudson NY 10520

Francesca Sabadie
1 Walworth Avenue
Scarsdale, NY 10583

Carl J. Schaerf
Schnader Harrison Segal & Lewis LLP
Attorney for Guide One Insurance Company
140 Broadway, Suite 3100
New York, NY 10005-1101

Jonathan Landsman
260 Madison Avenue, 17th Fl.
New York, NY 10016

Original and Courtesy Copy to Magistrate Maas:
United States District Court Judge Richard J. Holwell
500 Pearl Street Room 1950
New York, NY 10007

Courtesy copy to
Magistrate Judge Frank Maas
500 Pearl Street
New York, NY 10007