USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: _____ 9/20/2010

Index No. 09-CIV-5314

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

(X PRO SE OFFICE

ELIZABETH COMBIER,
Plaintiff

-against-

THE STATE OF NEW YORK,  SUPREME COURT  OF THE STATE OF NEW YORK
APPELLATE DIVISION FIRST DEPARTMENT, HON, JOHN T.  BUCKLEY, in his
individual and official capacity, HON.KARLA MOSKOWITZ, in her individual and
official Capacity, ELIOT SPITZER, in his individual and official Capacity, ERIC REISS,
in his individual and official Capacity, LAUREN HOLMES, in her individual and official
capacity, DAN RAMOS, in his individual and official capacity, HON. JONATHAN
LIPPMAN, in his individual and official capacity as the former Presiding Judge of the
New York Supreme Court, Appellate Division, First Department, HON RENEE R.
ROTH, in her individual and official capacity as the former Manhattan Surrogate Court
Judge,  HON. TROY WEBBER, in her individual and official capacity, BARBARA
LEVITAN, in her individual and official capacity, MARY SANTAMARINA, Esq.,
in her individual and official capacity, ETHEL GRIFFIN, in her individual and official
capacity, PETER SCHRAM, in his individual and official capacity, DR. FRED
ANDERSON, in his individual and professional capacity, KENNETH WASSERMAN, in
his official and individual capacity, FRANCESCA SABADIE, individually,
LAWRENCE MARK, individually, JULIA DANGER, individually, ELI UNCYK, in his
individual and professional capacity, JEFF KOFSKY, in his individual and professional
capacity, JONATHAN LANDSMAN, in his individual and professional capacity,
DOROTHY HENDERSON in her individual and professional capacity, GUIDE ONE
INSURANCE COMPANY, PRESBYTERY OF NEW YORK CITY,

Defendants

## PLAINTIFF'S OPPOSITION TO THE REPORT AND RECOMMENDATION OF
## MAGISTRATE JUDGE FRANK MAAS

Elizabeth Combier
Plaintiff Pro Se
Editor, Parentadvocates.org
Editor, NY Court Corruption
315 East 65th Street
New York, NY 10065

## TABLE OF CONTENTS

PRELIMINARY STATEMENT...................................................................3

POINT I: RELEVANT BACKGROUND FACTS.....................................4

POINT II: STATE AND NON-STATE DEFENDANTS DO NOT HAVE JUDICIAL IMMUNITY AND/OR QUASI-IMMUNITY UNDER THE CIRCUMSTANCES CITED IN THE CASE AT BAR, AND THEREFORE THE CAUSES OF ACTION BROUGHT IN THE SECOND AMENDED COMPLAINT CANNOT BE DISMISSED WITHOUT VIOLATING PLAINTIFF'S RIGHTS TO THE RELIEF SHE REQUESTS.............17

POINT III: PLAINTIFF HAS NEVER BEEN ALLOWED TO ADDRESS HER GRIEVANCES BEFORE AN IMPARTIAL TRIBUNAL DESPITE HER RELIANCE ON THE LAW AND HER FILING THE PROPER PAPERS IN A TIMELY FASHION................................................................22

POINT IV: PLAINTIFF HAS MET HER BURDEN TO PROVE RICO AND VIOLATIONS OF LAW PURSUANT TO §1983 BY CITING FACTS RATHER THAN CONCLUSIONS....................................................28

POINT V: THIS COURT HAS CREATED PROCEDURAL ERRORS THAT ARE FATAL TO A FAIR HEARING FOR PLAINTIFF AND FURTHER THE DENIAL OF DUE PROCESS THAT SHE CITED IN HER COMPLAINT.............................38

POINT VI: LEAVE TO REPLEAD SHOULD BE FREELY GIVEN.................. .48

## PRELIMINARY STATEMENT

Plaintiff, in her objections to Magistrate Judge Maas' Report and Recommendation that

follows, requests that if the Honorable Judge Richard J. Holwell does not disqualify

himself due to his conflicts of interest with the subject matter in the case at bar - as the

former Chief Litigator and Attorney at White & Case for Bankers Trust when Plaintiff

was a client (EXHIBIT 9, submitted as part of the Plaintiff's request for Default

Judgment), as well as a member of the First Department Disciplinary Committee in 2004

when Plaintiff brought her complaint about Kenneth Wasserman's harassment to this

Committee and to the attention of Judge Jonathan Lippman - that he discard in total the

Report and Recommendations and allow Plaintiff's complaint to go forward because of:

Maas' baseless conclusions that the Defendants have judicial absolute or quasi-absolute

immunity and subject matter jurisdiction for their actions in respect to the unverified

Objections To Probate 2000-09 and in the matter *Danger v Combier*; Maas' support for

violations of Federal Rules of Civil Procedure and for denial of the Constitutional rights

of plaintiff ; corruption of process that prejudiced the case at bar against Plaintiff and

once again denied her a right to be heard, denied her ownership of the property

bequeathed to her by her mother and permitted the destruction of that property, and

denied her the right to address her grievances after being made a victim of a conspiracy

of harm formed and pursued by members of the judicial system of the State of New York

for twelve years. Plaintiff was timely in filing her claims pursuant to Section 1983 (3

years' statute of limitations) and RICO (4 years) by recognizing on or about July 22,

2006 that there might be a RICO involving both state and non-state actors in the matters

then being pursued in the courts, the case *Danger v Combier* and probate in Surrogate's

Court. She filed her complaint in this Court on June 8, 2009. Plaintiff maintains her claim to the relief cited in her complaint as a matter of justice and as a matter of this Court being the only venue at which the causes of action cited in the complaint can be heard.

## POINT I
## RELEVANT BACKGROUND FACTS

Plaintiff, a reporter on court corruption and white collar fraud, has inside knowledge and information of the "old boy's network" that forbids any litigant from successfully suing Jonathan Lippman or any other employee of the Court Cartel that makes huge tax-free profits every day by taking the property of people for their own use under color of law, as in the case at bar. Anyone who reads the 77-page order of Judge John Gleeson reported at 411 F. Supp.2d 212 (E.D.N.Y. 2006) granting a preliminary injunction in the matter *Lopez-Torres v. N.Y. State Board of Elections*, 462 F3d 161 can read graphic descriptions of the state judicial system and the involvement of local political leaders in the hiring and firing of law clerks by state judges, among other unethical if not legally improper activities, all despised by the public but ignored by officers of the Unified Court System and their personnel and staff.

As stated in her complaint, Plaintiff has been called up by telephone and mailed threats for more than ten years in order to extort money and property from her for her sister. In order to pursue these illegal acts, Defendants used two baseless matters to harass Plaintiff into submission: unverified Objections To Probate and the frivolous matter *Danger v Combier*.

Plaintiff has been injured – to the extent of suffering heart failure in July 2006 – as a direct consequence of the *ultra vires*, unlawful actions of the state and non-state defendants named in the complaint in the case at bar, and has brought this action to

finally assert her right to equal protection under the law as well as obtain relief from the denial of her Constitutional and Federal rights. The Defendants, State and non-State actors, named herein have acted together outside of their judicial authority, *ultra vires,* without jurisdiction and under color of state law, to take possession of the estate property belonging to Julia Elizabeth Taschereau ("JET") that was bequeathed to her daughter Elizabeth "Betsy" Combier, Plaintiff pro se, in a Will signed by the testator, her mother, in front of three witnesses and an Attorney on November 21, 1997. JET asked Henry "Hank" Sheinkopf to find an Attorney who would assist her in writing a new Will leaving her apartment to Plaintiff after Danger harmed her – and sent her to the hospital – on July 25, 1997. Hank's associate, Kenneth Brown, an attorney, worked with JET on the preparation of her Will, and the Will signing ceremony took place in November 1997. Hank Sheinkopf was part of the Democratic Club in Brooklyn that picked Renee Roth for the job of Manhattan Surrogate, and he helped Roth win her seat. He worked on all of her election campaigns, and assisted the current Surrogate Nora Anderson obtain her seat before she was indicted for election fraud and put on trial in April, 2010. Defendant Roth knew, as did Sheinkopf's colleagues in the Manhattan Surrogate Court Law Department, Mary Santamarina and Barbara Levitan, that there were conflicts of interest with Sheinkopf being mentioned as an alleged co-conspirator with Plaintiff in Wasserman's Objections To Probate action alleging undue influence. Roth should have recused herself when the unverified Objections were filed in February 2000, but she did not do so. Surrogate Anderson has not decided the bench trial (August 4, 2009 – November 2, 2009) twelve years after the JET Will was filed in Surrogate Court pursuant to the rules of

Surrogate Court Procedure Act, allegedly as a result of the RICO cited in Plaintiff's complaint. Anderson is aware of the conflict of interest but has not recused herself either. It is well-known in New York City that the Court Cartel and the Real-Estate Cartel in New York City both target elderly women with property, and convert the property to their own when they get tired of waiting for the person to die or become incapacitated, or, alter or destroy the probate process after death to obtain property rights illegally. Madison Avenue Presbyterian Church (MAPC, Second Amended Complaint, "SAC") watched JET carefully for the last few years of her life so that they could take control of her apartment at 201 East 77th Street in Manhattan's East Side when she died or became ill. Pastor Fred Anderson testified to this at his deposition in the case where he was sued for withholding JET's ashes from Plaintiff for eight days. Two juries found him liable for damages for this.

After JET's sudden death, Defendant Kenneth Wasserman, hired by Guide One Insurance Company and MAPC Pastor Fred Anderson, stole all the valuable property from the apartment on or about July 26, 1998, and handed over some or most of this property to a person unknown to the testator, Lawrence Mark. It is unknown whether or not Wasserman sold or stored any of the property in his home in New Jersey. Defendants then gave Mark the right, without any authority to do so, to keep the property under his control. This Court should take Judicial Notice that Guide One Insurance Company has never been listed as doing business in this State, and the New York State Department of Insurance as well as the Cuomo's Department of State has no listing for this company under any name.

The Will itself, a legal contract, was never declared invalid and yet no decision on the probate has been made after more than twelve years and the validation of JET wanting what she wrote in her Will. But the complaint is not about the Will contest. The core of the action brought herein is the mis-use of judicial immunity, quasi, qualified, and absolute, to protect criminal acts performed in the State of New York with the support and assistance of the New York State Attorney General's office and staff.

All the named Defendants – both state and non-state actors - contributed to the RICO described in the SAC by adding violations of law and process to the obstruction of justice that could not have succeeded as individual actions, performed without the partnership. Plaintiff is, of course, not alone in grieving the actions of state and non-state actors pursuant to RICO, especially in New York State. Jonathan Lippman has been sued more than thirty times in State and Federal Courts, by pro se litigants, lawyers, and his own people (Office of Court Administration – Judith Memblatt, the Departmental Disciplinary Committee – Christine Anderson, Court Officer's Association, etc). He assumed his position under a cloud of irregularity that has been in the media for many years. Research shows a fundamental flaw in the search for justice in the Courts of New York in that the members of the New York State Unified Court System and other named defendants in the complaint have abandoned the principles of integrity, and of a fair and competent judiciary that honors the judicial office as a public trust.

This conspiracy provided a 'valid' basis for the actions cited in the SAC by claiming jurisdiction and judicial immunity from prosecution for their support for an unverified document labelled "Objections To Probate" written but never filed in any court by Defendant Kenneth Wasserman as well as his making up a case *Danger v Combier* that

lasted nine years, 2000-2009, in which he alleged theft of money from Banker's Trust by Plaintiff *after* Plaintiff and her sister agreed, in a notarized agreement, to end the Trust and divide the money held inside, in 1999. Bankers Trust, the Co-Trustee along with JET, was never named as a Defendant; moreover, as there was no claim by Danger that the agreement with her sister was not valid, and the Trust ceased to exist after 1999, the case *Danger v Combier was never under the jurisdiction of any judge in any court and was frivolous.*

Finally, Plaintiff was never permitted to present her side of the story as to her care for her mother, the 50 years of beatings by her sister, Julia Danger, of their mother, and the final injuries suffered by their mother at the hands of Defendant Danger in July 1997, that compelled Julia Taschereau to re-do her Will. Taschereau knew that both of her daughters would receive, and did receive, more than $500,000 each from the Samuel Strauss Trust held at Banker's Trust outside of her estate and never part of her Will, from 1953 to the day of the agreement between Danger and Combier in 1999 closing the Trust. Thus there was no Trust to return any money to even if the allegation of Plaintiff's theft was true, which it wasn't. Wasserman had no claim upon which relief could be granted. The twelve years of harassment and obstruction of justice and Plaintiff's rights by Defendants can be seen in the way that all the Defendants pursued the case *Danger v Combier* despite no existing claim or jurisdiction, from State Supreme Court to Civil Court, to State Supreme Court, to Surrogate's Court, and back to State Supreme, then to the Appellate Division where, finally, Plaintiff's brief asking for relief and permanent dismissal was granted on October 1, 2009. The false "Trust case" most certainly never belonged in Surrogate Court, yet Defendants Roth, Santamarina, Levitan, Spitzer and

Lippman all kept it there from 2000 to 2009 for no reason other than to pursue their theft of JET's property and convert it to their ownership. For this reason the Will was never probated despite Plaintiff following all the rules in the SCPA. The Surrogate Court has personal and subject matter jurisdiction over Plaintiff and the JET estate, but has no jurisdiction over the objections written by Wasserman in 2000 and kept in his office for nine years without verification and not written as a petition.

The Appellate Division finally agreed with Plaintiff's argument in October 2009 that as there was no Trust, and as the agreement ending the Trust in 1999 between Combier and Danger was never contested, there was no jurisdiction in any court or by any judge. Yet Plaintiff was forced to pay legal fees and was threatened by Defendants – without any immunity because they were not covered by judicial act or jurisdiction of the Courts - for more than nine years, and told that she would indeed win the Will contest, but lose the "Trust case" . The unverified Objections and baseless matter labeled *Danger v Combier* create a RICO that could not be stopped by Plaintiff, acting alone and pro se after she left Lenox Hill Hospital on July 24, 2006.

On that day, Judge Renee Roth suddenly ruled that the Will signed by JET on November 21, 1997 not only DID exist (after Roth wrote on July 19 that JET died "intestate") but that it had been executed correctly by Attorney Kenneth Brown. (SAC). She then sent the frivolous and baseless case *Danger v Combier* back, for the fourth time, to the New York State Supreme Court, where it suddenly appeared on the docket of Judge Karla Moskowitz. Moskowitz insisted that the process of sending the same matter back and forth to different courts without any court taking jurisdiction was proper, and told Plaintiff that as the matter had suddenly ended up in the court computer, it must exist,

although Defendant Uncyck called Plaintiff on October 31 2006 to tell her otherwise. In fact, this telephone call implicated Spitzer, Roth, Wasserman and Danger in a conspiracy. In September and October 2006 Plaintiff argued in Moskowitz' courtroom that she had never been served any papers, but Moskowitz threatened her with a judgment and sanctions as well as a trial if she did not provide legal papers and appear in her courtroom after October 3, 2006, when Plaintiff told her that she would not return because there was no jurisdiction over *Danger v Combier* in hers or any other court. Wasserman appeared twice more before Moskowitz, without Plaintiff, who received threatening stipulations of impending judgments yet refused to go to court when there was no Trust to provide Wasserman with the relief that he craved so badly. Finally Moskowitz wrote that if anyone made a motion to dismiss she would review it, and Plaintiff wrote a brief asking for the relief of finally dismissing the case forever. Moskowitz granted this with prejudice on December 31, 2007, and was then appointed to the Appellate Division by Eliot Spitzer. Wasserman appealed to the Appellate Division five months later, and lost again on October 1, 2009 with a *final dismissal on lack of jurisdiction and no Trustee named as a Defendant.*

The predicate act was to create a matter that could not be anything but frivolous, and have Plaintiff rely on her attorneys as they pursued motion practice for the frivolous case from 2000 to 2009, simply to harass and harm Plaintiff and extort property and/or money from her for her sister.

On p.22 of his Report and Recommendation, Maas ludicrously asserts that:

"Accordingly, in the absence of any showing that the exercise of its plenary jurisdiction was proscribed, Justice Moskowitz and the Supreme Court in which she then sat had

subject matter jurisdiction over the dispute between Danger and Combier concerning the

Trust assets."

Justice Moskowitz herself, in granting Plaintiff's Motion To Dismiss *Danger v Combier*

wrote in her decision that there was no Trustee named in the case, and no Trust, so she

had no jurisdiction and there was no relief possible. Where does Judge Maas find Trust

assets in 2006 that could have been given to Wasserman as his relief? This

Recommendation is fatal to this Court's acceptance of Maas' Report and

Recommendation.

But that is not all that is wrong with Judge Maas' Report and Recommendation. Despite

Moskowitz dismissing the case Danger v Combier, just as Supreme Court Judge Beatrice

Shainswit did in 1999 and Judge Roth did in 2006 by sending it out of her court, Maas

found that "the court had personal jurisdiction over the parties". (p. 22). No one else aside

from Defendant Wasserman thought that this matter, a derivative Trust case without a

Trustee as a Defendant and with no Trust upon which to give any relief, was anything but

frivolous and baseless, although it floated through the Courts simply to harass Plaintiff

for ten years. Maas' finding that the Supreme Court had personal jurisdiction over

Plaintiff and Julia Danger is shocking to the conscience and ridiculous, and there is no

fact or law that can substantiate this claim. He writes, "Although Danger lives in France,

she brought her suit in state court and therefore consented to its exercise of personal

jurisdiction over her. This is backwards. It is a fact that Danger lives in Paris, but she had

no standing as a Trustee, signed an agreement with Plaintiff that ended the Trust and

closed the account forever in 1999, and never contested the agreement's terms. No Court

had personal jurisdiction over either sister in the matter *Danger v Combier*, and not one

claimed personal jurisdiction over either Plaintiff or her sister. Plaintiff was never served any complaint, but was told to appear in Court before Moskowitz inside a jury appearance form that had her name written in the address bar over the erased name of someone else. In fact, Plaintiff's papers, submitted on September 13 and October 3 2006, say that the appearance cannot lead to personal jurisdiction over her because there was no Trustee and no Trust. Maas cannot claim any fact or law that would apply here , as all the Courts agreed that not naming a Trustee as a Defendant and not having any Trust to give relief was fatal to this matter. That is why it was moved to four courts over nine years. Maas' statement at the top of p. 22 that "Combier also clearly is wrong to the extent that she alleges that Justice Moskowitz had no jurisdiction over the case" is a strange statement to make, as there is no fact or law upon which to base this on. Even more alarming are two other statements made by Judge Maas:

   (1) "Thus none of Combier's allegations are sufficient to overcome Justice
       Moskowitz's judicial immunity" *in the matter previously discussed as frivolous,*
       *not based on an existing Trust, and without Bankers Trust, the Trustee, named*
       *as a Defendant.* (emphasis added by Plaintiff)

   (2) "Moreover, the materials provided to the Court by Combier establish that the
       claim that Justice Moskowitz paid Wasserman to harass Combier is implausible.
       Indeed, the claim probably rises to the level of being sanctionable." *– after*
       *Judge Maas rejected the tape recording saying that he never accepted media of*
       *any kind and after it was established that both Wasserman and Moskowitz were*
       *harassing Plaintiff with the case Danger v Combier that never was anything but*
       *frivolous. (*emphasis added by Plaintiff). Indeed, the reason for Detective

Ahearne looking into the matter at all was that Plaintiff filed an aggravated harassment claim against Wasserman for calling her home for more than four years, screaming that she had to give her sister $375,000 'or else' she would lose everything at trial of the Trust case (that was never accepted as valid by any court). Mary Santamarina was also in on the telephone calls, and this is a predicate act as described under RICO. As the case *Danger v Combier* was never under the jurisdiction of any court, and all the State and non-state actors that worked with Wasserman to harass Plaintiff by pursuing this matter as if it was valid, were never given judicial immunity. May Plaintiff here also remind this Court that Wasserman called Plaintiff on January 2, 2007 *to force her to attend a deposition in the Danger v Combier matter, that he had no right under any court jurisdiction to request.*

Similarly, the unverified Objections To Probate (2000-2009) does not give jurisdiction, and therefore cannot confer judicial immunity on any of the Defendants. It is a mystery why Wasserman never verified the Objections and filed them in the Court according to the SCPA, as a Verified Petition. (See SAC). The fact of the matter is that he did not, and there was no jurisdiction over these baseless claims by the Surrogate Court, and none of the Defendants are covered by any judicial, quasi, qualified, or other immunity in their attacks on Plaintiff and support for Danger's 1 ½ document. The 1997 Will should have been probated in 2001 after all the 1404 depositions were completed, and all discovery was over. Indeed, Wasserman never specified a single instance nor did he have any documentation on what he called "undue influence and the 1997 Will should have been probated. N.Y.A.D. 3 Dept. 1994. In the Matter of Estate of Allen, 621 N.Y.S.2d 138,

210 A.D.2d 856,  conclusory particulars contained in bill of particulars verified by

attorney were insufficient to make prima facie showing of undue influence needed to

attack validity of will; attorney who verified bill of particulars lacked personal knowledge

of particulars and particulars were devoid of detail; N.Y.A.D. 3 Dept. 1993: Surrogate

Court had discretion to preclude objections to probate of last will and testament, where

objecting party failed to respond to demand for bill of  particulars; although objecting

party argued that delay was occasioned by difficulty in obtaining medical records, she

could have furnished partial bill of particulars and reserved right to supplement it later

when medical information became available.  See also Matter of Estate of Johnson, 596

N.Y.S.2d 526 192 A.D.2d 859. N.Y.A.D 4 Dept 1997: mere showing of opportunity and

motive to exercise undue influence in connection with will is insufficient to present

triable issue of fact, without evidence that undue influence was actually wielded. Matter

of Will of Coniglio, 663 N.Y.S. 2d 456, 242 A.D. 2d 901:  unsubstantiated and

conclusory allegations are insufficient to raise triable issue of fact as to whether will

proponent knowingly made false statement that caused testator to change his will. N.Y.

1979:  while circumstantial evidence adduced at trial in probate proceeding may have

tended to indicate existence of opportunity and motive on the part of will proponent to

exercise undue influence, where there was no showing that it in fact was ever exercised,

contestant's proof fell short of establishing prima facie case of undue influence.  Matter

of Fiumara's Estate, 418 N.Y.S.2d 579, 47 N.Y.2d 845, 392 N.E. 2d 565.

N.Y.A.D. 2 Dept. 1999.  Without a showing that undue influence or fraud was actually

exercised upon the decedent, mere speculation that opportunity and motive existed to

exert such influence will not suffice to raise a triable issue as to whether the will reflected

the intent of the testator.    In re Bustanoby, 691 N.Y.S. 2d 179, 262 A.D. 2d 407.  Matter

of Bosco, 533 NYS 2d 933, 144 AD 2d 363.  Issue of undue influence should never have

been submitted to jury in absence of any evidence as to improper conduct on part of

proponent.  Matter of Hedges, 473 NYS 2d 529, 100 A.D. 2d 586.  Matter of Burke, 441

N.Y.S. 2d 542, 82 A.D. 2d 260.  Matter of estate of Kemble, 540 NYS 2d 585, 149 AD

2d 899. N.Y.A.D. 2 Dept 1993. In will context, it is insufficient to raise question of fact

as to undue influence to demonstrate motive and opportunity without showing that such

influence was actually exercised.  Matter of Tracy, 600 NYS 2d 138, 195 A.D. 2d 469,

leave to appeal denied 610 N.Y.S. 2d 149, 82 NY 2d 662, 632, N.E. 2d 459, reargument

denied 611 NYS 2d 137, 83 NY2d 801, 633 N.E. 2d 492, appeal after remand 634 NYS

2d 198, 221 A.D. 2d 643, leave to appeal denied 644 NYS 2d 144, 87 NY 2d 811, 666

N.E. 2d 1058. Due to the Wasserman Objections To Probate not being verified (until nine

years too late, August 4, 2009, the first day of the bench trial in front of Defendant

Webber) or written as a petition, the Surrogate Court could not take jurisdiction. If this

allegation is false, why did Wasserman have Danger sign a Verification sheet on July 30,

2009? Why not leave the Objections unverified? Because the Defendants named in this

matter knew the Objections could not be heard at the trial unless the paper was verified,

to confer jurisdiction. The Defendants were not covered by any immunity for their

actions cited in the SAC.

After the rushed verification, the Objections To Probate remained without jurisdiction of

the Courts due to laches. McKinney's SCPA 312; Matter of Estate of Germain, 526

N.Y.S. 2d 662, 138 A.D.2d918, appeal dismissed 533 N.Y.S.2d58, 72 N.Y. 2d 952, 529

N.E.2d426. The purpose of the statute requiring Verification in a proceeding for probate

of a Will upon interested persons is to ensure standing to object to probate of offered Will. McKinney's SCPA 1403 1(d); Matter of Estate of Karsten, 648 N.Y.S.2d 281, 169 Misc.2d 1050. N.Y.A.D. 1 Dept. 1993: Objectant to probate of propounded instrument failed to make prima facie showing on issues of lack of testamentary capacity and undue influence so as to be entitled to leave to file late objections to probate. Matter of Brody, 602 N.Y.S.2d 621, 197 A.D.2d447, leave to appeal dismissed 610 N.Y.S.2d 155, 82 N.Y.2d920, 632 N.E.2d465, reargument denied 612 N.Y.S.2d 110, 83 N.Y.2d847, 634 N.E.2d 606.

If, indeed, the Defendants in this matter were interested in honoring Plaintiff's rights in respect to the ownership of the estate property, they should have ordered Wasserman to verify the Objections and proceed with interrogatories and a Bill of Particulars so that Plaintiff could provide all the documented proof of Danger's harassment and physical harm of their mother, JET, as well as the letter from JET requesting that Plaintiff be given the "rights of survivorship" to the apartment and the Power of Attorney given to Plaintiff by JET in 1997 to protect her from Danger. Plaintiff was never asked to produce any of her documents because her arguments were never heard in any Court, although the Surrogate Court had jurisdiction over her, personally, and over the probate of the JET Will. But Defendants, acting in concert as a RICO, never wanted Plaintiff to present her side of the story because this might impair their reaching their goal, which was to permanently gain control over the property stored in the cold garage in Croton-on-Hudson belonging to Lawrence Mark.

Plaintiff objects to acceptance of the Report and Recommendations as follows:

(1) State and non-State defendants do not have judicial immunity and/or quasi-immunity under the circumstances cited in the case at bar, and therefore the causes of action brought in the Second Amended Complaint cannot be dismissed without violating Plaintiff's rights to the relief she requests;

(2) Plaintiff has never been allowed to address her grievances before an impartial Tribunal despite her reliance on the law and her filing the proper papers in a timely fashion;

(3) Plaintiff has met her burden to prove RICO and violations of law pursuant to §1983 by citing facts rather than conclusions;

(4) This Court has created procedural errors that are fatal to a fair hearing for Plaintiff and further the denial of due process that she cited in her complaint.

**POINT II**
**THE COURTS OF NEW YORK STATE NEVER OBTAINED**
**SUBJECT MATTER OR PERSONAL JURISDICTION OVER**
**"DANGER V COMBIER" NOR THE BASELESS AND**
**UNVERIFIED OBJECTIONS TO PROBATE AND THUS NONE**
**OF THE DEFENDANTS HAS IMMUNITY FROM**
**PROSECUTION FOR THEIR ACTS**

The bench trial on the issues of the capacity of Julia Taschereau and undue influence began on August 4, 2009 after 11 years of fraud on the Surrogate Court by Julia Danger and her alleged Attorney Kenneth T. Wasserman, who was, in 1999, fraudulently designated the real person of interest. No decision has ever been issued, and from the first minute, Plaintiff's right to a fair and impartial due process proceeding was compromised by the trial judge designated, Defendant Troy Webber, being sued herein. A handwritten note was found in the case file by Proponent in 2005 showing that Law Dept Attorney

Mary Santamarina told Mr. Wasserman to remain in the Court of Judge Renee Roth, and she gave him the Roth calendar for 1999. The case was fixed at this point. Upon information and belief, Mr. Wasserman was not told that Hank Sheinkopf was the person who ran the election of Renee Roth for the judgeship of the Manhattan Surrogate Court, yet he was also named by Wasserman as a person who allegedly helped Plaintiff exert evil powers over her poor defenseless mother. On August 4, 2009, the proceedings in Surrogate Court climaxed with the filing of a Verification sheet signed and notarized by Julia Danger on July 30, 2009 which was then attached to the unverified Objections To Probate, nine years to late to claim jurisdiction by the Court. The suddenly verified Objections To Probate is a fraud, due to lack of jurisdiction, laches, and testimony of Julia Danger that nothing in her "Objections" is true or known by her (deposition, August 2000). Danger also stated at her August 2000 deposition that she knew nothing about any undue influence, and that Julia Taschereau was of sound mind and had the capacity to understand she was signing a will on Nov. 21. 1997. The Objections are simply hearsay, made up by Wasserman, who has no personal knowledge of any facts concerning Julia Taschereau. The unverified Objections To Probate are baseless claims made as part of a deliberate plan to obtain by illegal means the property of Julia Taschereau, and these acts must be dismissed as fraud on the court. See Nikon Inc. v ELens. Com, Inc. District Court, Nassau County Oct. 2000; CPLR 3020; failure to verify a pleading is a jurisdictional defect which required the dismissal of the Objections, and the nine – year delay is inexcusable and does not cure the lack of jurisdiction. Red Roof Inn Inc v Penninipede, SP 5454/07, District Court, Nassau County, 12/2007. Counsel's failure to

provide a verified signature of the party signified frivolous conduct. Zibell v County of

Westchester, 10866/06, 6/2007.

Plaintiff filed motions with the court, requesting that the court treat the unverified

Objections as a nullity, pursuant to Article 30, Rule 3022:

"A defectively verified pleading shall be treated as an unverified pleading. Where a
pleading is served without sufficient verification in a case where the adverse party is
entitled to a verified pleading, he may treat it as a nullity, provided she gives notice with
due diligence to the Attorney of the adverse party that she elects to do so."

Wasserman ignored these written notices, yet the Court was required to take notice.

Verification confers jurisdiction, and as there were no verified Objections from 1998 (the

filing of the Will in Manhattan Surrogate's Court, for probate) to 2009 (first day of the

trial without a jury on the validity of the Will). Plaintiff had a protected property interest

in obtaining the property bequeathed to her in her mother's Will, and was denied her

rights by the conspiracy of the Defendants acting under color of state law.

A recent Federal case, the "Cash For Kids" case against Judges Mark Ciavarella and

Michael Conahan in Pennylvania has an extensive discussion of Judicial immunity. In his

Memorandum and Order, Judge Richard Caputo writes,

"For **judicial immunity** to apply, only two requirements must be met: 1) jurisdiction
over the dispute, and 2) a judicial act. As to the first, a judge is not immune only when he
has acted in the "clear absence of all jurisdiction." *Stump v Sparkman*, 435 U.S. 349
(1978). As to the second prong, judicial immunity extends only to "judicial acts" not
administrative, executive, or legislative ones. Id. At 360-61."

Pursuing the unverified Objections To Probate for nine years, and providing no respite
from abuse in the matter *Danger v Combier* cannot confer immunity on any of the
Defendants because in neither of these matters was jurisdiction conferred.

Caputo continues, "**Sovereign immunity** is only available to state employees while they
are acting within the scope of their duties.....Conduct of an employee is within the scope
of employment when it is of a kind and nature that the employee is employed to perform,
it occurs substantially within the authorized time and space limits, and the action is
prompted, at least in part, by a purpose to serve the employer. *Larsen v. State Employees'*

*Retirement System*, 553 F. Supp.2d 403 (M.D. Pa 2008). . . . the scope of employment is a question of fact..."

Plaintiff claims that Defendant Roth was not acting in the scope of her duties when she issued her order on July 19, 2006 that her neighbor at 31 Chambers Street, Ethel Griffin, the Public Administrator, could obtain control over the JET estate due to the implausible fact that JET never wrote a Will and died "intestate". She, knowing that this was untrue, gave a copy of this order to Peter Schram, who mailed it to Plaintiff with a letter he wrote saying that he was now taking the estate for Ms. Griffin. Then on July 25, 2006, Schram told Plaintiff, who had just been discharged from the hospital, that he would now be administering the estate even though he had a copy of the 1997 Will and all the papers filed in the court since 1999 in front of him. On July 24 Judge Roth made a new order, unbeknownst to Schram, evidently, that the Will did exist, and the Will had been executed correctly. But Griffin and Schram remained in control. Plaintiff sees no judicial act in this. Attorney for Griffin, Sheetz, wrote in his Motion to Dismiss that the order saying that JET died "intestate" was a clerical error. Maas says this was an error as well. But the error was never fixed by anyone. Plaintiff's case for probate, and her innocence in the charges against her were never examined by anyone. Thus it is a stretch of anyone's imagination that the clerical "error" in the July 2006 order could be seen as a judicial act and Defendants cannot take immunity.

**Absolute immunity** is available to government actors that are performed in their "quasi-judicial" role for conduct that is "intimately associated with the judicial phase of the crimoinal process." *Kulwicki and Dawson*, 969 F.2d 1454, 1463 (3rd Cir. 1992); *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). In determining whether to grant such immunity, courts must take a functional approach, focusing on the nature of the function performed, not the identity of the actor who performed it and evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of that function. *Stankowski v. Farley*, 487 F. Supp.2d 543, 552 (M.D. Pa. 2007). However, where a

government actor is acting in his or her investigative or administrative capacity, those actions are only protected by qualified immunity, not absolute quasi-judicial immunity. *Kulwicki* 969 F.2d at 1463….."

None of the Defendants can claim jurisdiction and any immunity over the "intestate"

error, the pursuit of unverified objections, nor the frivolous matter known as *Danger v*

*Combier* that had no basis in fact or law.

**Qualified immunity** protects government officials from suit for conduct that does not violate a clearly established statutory or constitutional right of which a reasonable person would be aware. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))…..Undoubtedly, an objectively reasonable person would know that it is a violation of constitutional rights to falsify court documents…."

None of the Defendants had immunity or jurisdiction over the clerical error of JET dying

"intestate", the pursuit of unverified objections, or pursuant to the frivolous matter

*Danger v Combier* that had no basis in fact or law. Also, all Defendants were sued in the

individual capacity.

Caputo goes on to a discussion of Section 1983:

"**Section 1983** provides redress for individuals whose constitutional rights are violated by government actors. "To establish liability under 42 U.S.C. §1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained injury." *Elmore v. Cleary*, 399 F.3d279,281 (3d Cir. 2005)."

And Section 1983 Under Color of State Law:

"Generally, to satisfy the **under color of state law** prong, the defendant must have "exercised power possessed by virtue of state law and made possible only because wrongdoer is clothed with authority of state law." *David v City and County of Denver*, 101F3d1344 (10th Cir. 1996)….."a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of §1983." *Abbott v. Latshaw*, 164F.3d141,147-48 (3dCir.1998)(quoting *Dennis v Sparks*, 449 U.S. 24, 27-28 (1980))…….

To demonstrate **a conspiracy under §1983**, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under

color of law'. *Williams v. Fedor*, 69 F. Supp.2d 649,666 (M.D. Pa. 1999) (quoting *Parkway Garage, Inc. v City of Phila.*, 5F3d 685, 700 (3d Cir. 1993))......"

Plaintiff has shown how, for twelve years – although she relied on her attorneys for eight of these years until July 2006 – the Defendants in the case at bar worked together to gain control over the estate of Julia Taschereau and ignored the Plaintiff's documentation providing the validity of the 1997 Will because Defendants would not and could not hear from her [Plaintiff] as this would stop their association-in-fact enterprise. See EXHIBIT 1, the Caputo decision on this topic.

## POINT III: PLAINTIFF HAS NEVER BEEN ALLOWED TO ADDRESS HER GRIEVANCES BEFORE AN IMPARTIAL TRIBUNAL DESPITE HER RELIANCE ON THE LAW AND HER FILING THE PROPER PAPERS IN A TIMELY FASHION

Judge Caputo continues:

"To establish a cause of action for **procedural due process violation**, a plaintiff must first prove that a person acting under color of state law deprived him of a protected property interest; and second, he must show that the procedures available to him failed to provide him with due process of law." *Alvin v. Suzuki*, 227F.3d107,116 (3d Cir. 2000)"

The SCPA provides Plaintiff with guideline to proceed to probate, all of which were followed by her attorneys at the beginning of the twelve year battle described in these pages. From 2000 Plaintiff has been deprived of due process of law by the Defendants who deprived her of presenting proof of the validity of the 1997 Will and the ownership of the property as assigned to her in the Will, a contract that the Defendants were supposed to honor but did not, for reasons of wanting to profit from the estate themselves.

On RICO, Caputo writes:

"[T]he compensable injury flowing from a **[RICO violation]** 'necessarily is the harm caused by the predicate acts sufficiently related to constitute a pattern, for the essence of

22

the violation is the commission of those acts in connection with the conduct of an enterprise" *Anza v. Ideal Steel Supply Corp.* (quoting *Sedmia, S.P.R.L. v Imrex Co.*, 473 U.S. 479, 497 (1985)). When considering whether an alleged injury is sufficiently direct, the Supreme Court has looked to three underlying justifications for the requirement of proximate causation: (1) difficulty in calculating the amount of a plaintiff's damages attributable to remote violations;(2) avoiding the need to apportion damages amongst different levels of plaintiff and to avoid multiple recoveries; and (3) the general interest in deterrence is already served where other plaintiffs with more direct injuries may assert claims. *Holmes* 503 U.S. at 269-70…..the statutory codification of honest services fraud, 18 U.S.C. §1346 includes a "scheme or artifice to deprive another of the intangible rights of honest services."…..Because Plaintiffs allege an economic injury proximately related to the predicate acts of honest services fraud, they have standing to bring civil RICO claims."

Plaintiff has stated her cause of action as the RICO and violations of her rights by Defendants who were not given immunity due to the fact that there was never any jurisdiction over the "clerical error" of the 'intestate' order in 2006, the nine-year pursuit of resolution against Plaintiff in the frivolous matter Danger v Combier, and the lack of jurisdiction for the unverified Objections To Probate.

Another fact to be considered is the changing of the first page of the transcript of the April 1, 2009 status conference attended by Plaintiff, Wasserman, and Schram by Attorney Monica Connell. She presented this Court with a different first page in her Motion to Dismiss to that submitted by Plaintiff in her SAC. Plaintiff's transcript clearly describes Wasserman as the Attorney for Respondent, while Connell's version has Wasserman as "Attorney for Petitioner". This is a fraud on the Court as Danger never submitted a Petition to any Court in any matter related to the case cited herein. This is an attempt by the Defendants to claim jurisdiction where there wasn't any. Without jurisdiction, all acts performed by a judge is ministerial, not judicial, and cannot give the State actor judicial immunity.

The Maas Report's acceptance of the sudden verification of the Objections To Probate as valid (pp. 20-21) and as a legal basis to proceed to a bench trial without a jury before Judge Troy Webber who is being sued compromises the impartiality of the court and denies Plaintiff her due process rights

Proponent objected to the acceptance of the Verification notarized by Kenneth T. Wasserman and signed by Julia Danger on July 30, 2009, as invalid due to its' untimely validation and the admission of fraud by Julia Danger at her deposition in 2000 as well at trial. This Court's acceptance of the "Objections To Probate" on the first day of trial is prejudicial to the rights of the Proponent and cannot be valid nor can the trial be seen as equitable due to laches. The "Doctrine of laches" is based upon the maxim that equity aids the vigilant and not those who slumber on their rights. It is defined as neglect to assert a right or claim which, taken together with a lapse of time and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. Wooded Shores Property Owners Ass'n, Inc. v Matthews, 37 Ill.App.3d 334, 345 N.E.2d 186, 189. Laches also applies here as the neglect for an unreasonable and unexplained length of time under the circumstances permitting diligence, to do what in law should have been done. Lake Development Enterprises, Inc. v Kojetinsky, Mo.App. 410 S.W.2d 361, 367. This Court has failed to address or remedy the unreasonable and unexplained delay of nine years in asserting rights which work to disadvantage Proponent. Kennedy v Denny, 237 Ky. 649, 36 S.W.2d 41, 42.

The conduct of this Court in collusion with Mr. Kenneth T. Wasserman ("Wasserman") has placed Proponent in a situation where her rights are imperiled and her defenses

embarrassed. This is the basis of laches. State v Abernathy, 159 Tenn. 175, 17 S.W.2d

17, 19.

Laches requires an element of estoppel or neglect which has operated to prejudice a

party, and this is the case in this proceeding. Estoppel by laches is a failure to do

something which should be done or to claim or enforce a right at a proper time.

Hutchinson v Kenney, C.C.A.N.C. 27 F2d 254, 256.

In the proceedings pursuant to validating the 1997 Will of Julia Taschereau

("proceedings") which has remained before this Court for eleven years, probate of the

Will should have been considered in 2001 when all the 1404 depositions as well as the

depositions of draftsman Kenneth Brown, Julia Danger, and Elizabeth Combier were

completed. Proponent attempted to get the necessary relief at that time, but was prevented

from enforcing her rights to the property left to her by her mother by Wasserman and this

Court. Croyle v Croyle, 184 Md. 126, 40 A.2d 375, 379.

Estoppel in pais (equitable estoppel) rests upon the principle that when a person by

his/her acts causes another to change his/her condition to his detriment,  the person

performing such acts is precluded from asserting her right which she otherwise might

have had. Peplinski v Campbell, 37 Wash.2d 857, 226 P.2d 211, 213.  Estoppel by laches

is presented here and Julia Danger, the party estopped, had knowledge of the transaction

to deny Proponent her property rights, yet mislead Proponent to her prejudice. Wisdom's

Adm'r v Sims, 284 Ky. 258, 144 S.W.2d 232, 235,  236. Surrogate Court abused it's

discretion in approving Danger's Verification on the first day of trial without a jury.

McKinney's SCPA 312; Matter of Estate of Germain, 526 N.Y.S. 2d 662, 138 A.D.2d

918, appeal dismissed 533 N.Y.S.2d 58, 72 N.Y.2d 952, 529 N.E.2d 426. Purpose of

Statute requiring Verification in a proceeding for probate of a Will upon interested persons is to ensure standing to object to probate of offered will.   McKinney's SCPA 1403 1 (d); Matter of Estate of Karsten, 648 N.Y.S.2d 281, 169 Misc.2d 1050. N.Y.A.D. 1 Dept. 1993   Objectant to probate of propounded instrument failed to make prima facie showing on issues of lack of testamentary capacity and undue influence so as to be entitled to leave to file late objections to probate; although beneficiary spent much time with decedent in her final months,, it was natural for beneficiary, a long time friend, to have been by decedent's side at that time, propounded instrument was prepared and executed while beneficiary was hundreds of miles away from decedent's apartment, and though decedent's two prior Wills did not name beneficiary, beneficiary had figured in decedent's dispositive scheme in some fashion for many years.     Matter of Brody, 602 N.Y.S.2d 621, 197 A.D.2d 447, leave to appeal dismissed 610 N.Y.S.2d 155, 82 N.Y.2d 920, 632 N.E.2d 465, reargument denied 612 N.Y.S.2d 110, 83 N.Y.2d 847, 634 N.E.2d 606.

To be relieved of default, petitioner is required to show reasonable excuse for delay  and that claim has merit.   Matter of Estate of Ab rams, 499 NYS 2d 535, 117 AD. Must show grounds for excusing laches.   Matter of Estate of Bobst. 630 NYS 2d 228, 165 Misc. 2d 776,  651 NYS 2d 26, 234 AD 2d 7, leave to appeal dismissed 660 NYS 2d 870, 90 NY 2d 644, 683 NE 2d 776

The Surrogate Court Procedure Act (SCPA) grants full and complete general jurisdiction in law and in equity to administer justice in all matters relating to estates and the affairs of decedents, and upon the return of any process to try and determine all questions, legal

or equitable, arising between any or all of the parties to any action or proceeding, or between any party and any other person having any claim or interest therein, *over whom jurisdiction has been obtained* as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires. SCPA §201, Const. Art. VI §12.

SCPA §203: The jurisdiction of the court is exercised by the commencement of a proceeding in the court. All proceedings are special proceedings and are commenced by filing a petition.

SCPA §303: All pleadings shall be verified.

The fact that Danger's "Objections To Probate" were filed on or about February 16, 2000 in Surrogate's Court and not verified until the first day of the trial, August 4, 2009 is a jurisdictional defect which required dismissal of the Objections. Danger never made a motion to correct this error, and therefore the Surrogate Court never took jurisdiction over the objections nor Objectant, and this is a basis for rejecting the "Objections To Probate". Red Roof Inn Inc. v Penninpede, SP 5454/07; District Court, Nassau County, 2007. The Surrogate court has had no subject matter or individual jurisdiction over Danger to be given any power to rule on the proceedings she allegedly initiated. Pinner v Pinner, 33 N.C.App. 204, 234 S. E.2d 633

Plaintiff made consistent references to the unverified "Objections To Probate" as fatally defective, but none of the Defendants took no notice. Thus this Court had no power to verify any "Objections To Probate" because the conditions essential to the exercise of jurisdiction have not been complied with. This court never took subject matter or personal jurisdiction over Julia Danger and her "Objections". The Surrogate Court lacks

the power to determine the rights of persons not parties to a proceeding and over whom

the Court has no jurisdiction. In re Crighton's Estate, 20 NY2d 124, 281 NYS 2d 811,

228 N.E. 2d 799 (1967). These proceedings should have been closed in or about 2001,

and Mr. Wasserman should be sanctioned for neglecting his duties to this court by

withholding the 1404 testimony as well as the deposition of Kenneth Brown for nine

years.

### POINT IV: PLAINTIFF HAS MET HER BURDEN TO PROVE RICO AND VIOLATIONS OF LAW PURSUANT TO §1983 BY CITING FACTS RATHER THAN CONCLUSIONS

Dismissal on Rule 8 fails because:

(a)only Monica Connell, ("Connell"), representing the State Defendants, asserts the Rule

8 basis for dismissal. Connell obviously despises Plaintiff's complaint, and shows this in

her writing. She describes the complaint generally as "a mass of verbiage", "so confused,

ambiguous, vague, or otherwise unintelligible that it's true substance, if any, is well

disguised". On page 10 she writes: "plaintiff's allegations of the State Defendants'

participation in an alleged conspiracy rely upon mere statements of legal conclusions…"

and, "Conclusory allegations of conspiracy are  insufficient to state a civil rights claim"

(p. 11).

(b) However, Connell did not address the issue of a lack of jurisdiction for any of the

State Defendants in the Will proceedings or Danger v Combier in her papers. Under Rule

8 (d), "Effect of Failure to Deny" , F.R.C.P. states that "averments in a pleading to which

a responsive pleading is required, other than those as to the amount of damage, are

admitted when not denied in the responsive pleading."

As Connell did not address at any time the lack of jurisdiction in Danger v Combier in

any court from 1999 – 2009, and for the Objections from 2000- 2009, she admits to the

truth of Plaintiff's pleading in her complaint. Plaintiff's complaint must not be dismissed

on any defect pursuant to Rule 8. No other defendant mentions this cause of action,

either. Rule 8 (e)(2) states that "A party may set forth two or more statements of a claim

or defense alternatively or hypothetically, either in one count or defense or in separate

counts or defenses. When two or more statements are made in the alternative and one of

them if made independently would be sufficient, the pleading is not made insufficient by

the insufficiency of one or more of the alternative statements. A party may also state as

many separate claims or defenses as the party has regardless of consistency and whether

based on legal, equitable, or maritime grounds."

The Court should notice that Plaintiff's Complaint was concise enough for Monica

Connell to have written in her Memorandum of Law: "Objections To Probate were not

properly verified…" (Connell, Memorandum of Law, p.4). Yet she did not elaborate on

this. References to the improperly verified Objections and the total lack of jurisdiction are

in Plaintiff's Complaint and in EXHIBIT 3 (SAC). While Connell mentions the fact that

Plaintiff is claiming improper verification of the objections, she does not address the

issue of a lack of jurisdiction and therefore no immunity for any of her State actors.

Connell accurately repeats the facts behind Plaintiff's allegations (complaint, paragraphs

40-84), and therefore this court must assume that Plaintiff has met her burden in making a

clear statement of the set of facts which entitle her to relief pursuant to Rule 8.

Thus Plaintiff has met her dual burden of providing (1) a concise and clear statement of

the set of facts that entitle her to relief by this and only this court, pursuant to F.R.C.P.

Rule 8; (2) a pleading with certain specified predicate acts that constitute a "pattern",

with more than two such acts having sufficient "continuity and relationship" for her RICO claim to be heard.

Defendant Kenneth Wasserman ("Wasserman") does not claim that the complaint was not concise and asserts no inability to understand the causes of action for conspiracy against him.  Wasserman was the attorney who "submitted to the court" the unverified "Objections to Probate". He, best of all, understands that he submitted Objections that he knew did not confer jurisdiction to have the will objected to. The complaint was concise enough for Wasserman to understand how defendant Roth met his mind in lawlessly depriving plaintiff of plaintiff's right to [1] being presided over by a judge with jurisdiction, {2] equal protection of law, and [3] the due process of having her mother's will probated.

In that the original alleged "Objections to Probate" was signed by Wasserman, and not verified by Danger until August 4, 2009 (the first day of the bench trial), the complaint was not so confusing that Wasserman failed to understand the cause of action against him for malicious prosecution of an action that had no jurisdiction. His not mentioning Plaintiff's averments on the issue pf jurisdiction and immunity signifies that he admits the claims in Plaintiff's complaint.

Significantly, not one of the defendants addressed the fact in their motions that there is no jurisdiction in any court over the unverified Objections To Probate, and no jurisdiction was ever assumed over the matter Danger v Combier, therefore no immunity is granted to any of the defendants for denying Plaintiff her Constitutional rights and other federal and state rights named in her complaint as well as obstructing justice. Defendants and this Court must admit Plaintiff's pleadings on this basis.

**Federal Rules of Civil Procedure Rule 8 (d) Effect of Failure to Deny,** states that
Plaintiff's averments are admitted when not denied in the responsive pleading. None of
the Defendants' motions to Dismiss/For Summary judgment deny that there was no
subject matter or personal jurisdiction for the Objections or for the matter <u>Danger v
Combier</u>.

Defendants conspired together in defense of a two-page paper titled "Objections To
Probate" allegedly written by Defendant Kenneth T. Wasserman ("Wasserman") in
February 2000 to deliberately and willfully harm Plaintiff and take possession of the
valuable property deteriorating in the garage of Defendant Mark. The control over the
property was not to actually take the items, but to prevent Plaintiff from receiving any
part the estate. Defendant Anderson joined with Wasserman and Danger in this effort,
because he wanted to punish Plaintiff for helping the African-American porters and
Union Steward Scott Vanos who worked at Madison Avenue Presbyterian Church when
he started pushing out Local 32 B&J. Immediately upon the death of Plaintiff's mother,
Anderson arranged for the Session to throw Plaintiff out of the Church for "being in
conflict with her sister" and then "being inactive". He pursued keeping Plaintiff out of the
church for a year, July 1998-July 1999, after the Presbytery accepted Plaintiff's
complaint and then put her on trial. Plaintiff won her membership back, then sued in
State Supreme Court for the withholding of her mother's ashes from her for eight days,
which is an extreme measure that caused emotional distress .

Wasserman has subjected the entire court system as well as the non-state defendants in
the case at bar to his deceit in the Will Proceedings of Julia Taschereau and in the case he

31

made up with the title "Danger v Combier" for the past eleven years with written and

verbal statements as to his position as the "Attorney for Objectant".

The fact is that Wasserman was never paid by Julia Danger, and his paper, the

"Objections", was not verified by Danger until August 4, 2009, (complaint, Ex.5) and by

then it was too late for the Surrogate Court to assume jurisdiction, due to laches and due

to the fact that in August 2000 Danger testified that the objections were not true.

On January 2, 2007 Plaintiff taped Wasserman when he called her at home to force her

into a deposition in the case Danger v Combier the next day. Plaintiff asked Wasserman

who was paying him, and he told Plaintiff that this was not an issue she should know

anything about. The right answer would have been, "your sister, of course". Then, a few

minutes later, a detective at the 19th Precinct in New York City, Det. Ahearn, told

Plaintiff that the judge in the Supreme Court who had the matter *Danger v Combier*

before her, namely Karla Moskowitz, was paying Wasserman to harass Plaintiff. Ahearn

told Plaintiff that both Moskowitz and law clerk Eric Reiss said that Wasserman was

working for the Court, and Moskowitz in particular. Plaintiff has made a CD of this

conversation and has made copies for all parties.(OPP, EXHIBIT 2)

It must be true that Wasserman wrote the Objections To Probate without Danger seeing

or knowing what he wrote, and therefore the objections have no validity as an instrument

upon which a court may assume jurisdiction and therefore initiate a judicial proceeding.

Wasserman never had any first hand knowledge of Julia Taschereau, nor did he know any

circumstances surrounding her life and death. He has made all of his information up, but

more importantly, Defendant Renee Roth ("Roth") and the other defendants accepted

Wasserman's claims as true , even though defendants knew that Wasserman was working

without personal knowledge of the circumstances concerning the Will, and Julia Danger

had never signed any papers giving the objections the validity and legitimacy needed to

pursue in court.

The actions described above violate Plaintiff's equal protection of the law and her First

Amendment rights to due process. The Equal Protection Clause of the 14th Amendment

of the U.S. Constitution prohibits states from denying any person within its jurisdiction

the equal protection of the laws. In other words, the laws of a state must treat an

individual in the same manner as others in similar conditions and circumstances. Plaintiff

relied on the Surrogate's Court Procedure Act and her attorneys, from 1998 – to 2006,

and she relied on them to probate her mother's Will. But this never happened due to the

acceptance of the unverified objections that Plaintiff's twin sister did not help write and

did not agree with. Danger was able to "get away scot free" with a paper that had no

validity under the law nor in fact, while Plaintiff paid out all of her money to her

Attorneys for the courts to obstruct justice and postpone any resolution for eleven years.

Plaintiff asserts the same clause, that she was denied equal protection under the law, in

her argument that the bench trial before Webber in August – September 2009 was unfair,

biased, a product of the association-in-fact enterprise, and should never have taken place

because the Surrogate's Court never assumed jurisdiction over Danger, personally, or the

objections.

Black's Dictionary describes the obstruction of justice as follows:

"Impeding or obstructing those who seek justice in a court, or those who have duties or
powers of administering justice therein. The act by which one or more persons attempt to
prevent, or do prevent, the execution of lawful process. The term applies also to
obstructing the administration of justice in any way – as by hindering witnesses from
appearing, assaulting process server, influencing jurors, obstructing court orders or
criminal investigations. Any act, conduct, or directing agency pertaining to pending

proceedings, intended to play on human frailty and to deflect and deter court from performance of its duty and drive into compromise with its own unfettered judgment by placing it, through medium of knowingly false assertion, in wrong position before public, constitutes an obstruction to the administration of justice."
Toledo Newspaper Co. v U.S., 247 U.S. 402, 38 S.Ct. 560, 564, 62 L.Ed 1186. 18 U.S.D.A. §1501 et seq.
Black's Law Dictionary, 6[th] Ed. P.1077

And,

"Whoever, having knowledge of the actual commission of a felony cognizable by the court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, is guilty of the federal crime of misprision of felony. 18 U.S.C.A. §4"
Black's p. 1000

These two fundamental principals are key to the RICO enterprise that Plaintiff describes in her complaint and that she has proof of, as can be seen in the Exhibits attached to her complaint as well as to this Opposition Motion.

It is a fact and not a conclusion that none of the State Defendants have a valid claim to immunity because no jurisdiction was ever assumed by the Surrogate Court to which the enterprise submitted their papers in the Will proceedings of Julia Taschereau and nine year, five-court journey of *Danger v Combier*. As no trial judge  ever assumed jurisdiction over either the unverified paper with the title "Objections To Probate" ("Objections) or the matter *Danger v Combier* which in the decision, oct. 1, 2009 was dismissed properly, on the basis of a brief written by Plaintiff in 2007, the defendants not only cannot claim Eleventh Amendment, absolute, quasi- or qualified immunity from prosecution for their misconduct and but also have met the standard for RICO: (1) that a " person" within the scope of the statute (2) has utilized a "pattern of racketeering activity" or the proceeds thereof (3) to infiltrate an interstate "enterprise" (4) by (a) investing the income derived from the pattern of racketeering activity in the enterprise; (b) acquiring or

maintaining an interest in the enterprise through the pattern of racketeering activity;  (c) conducting the affairs of the enterprise through the pattern of racketeering activity; or (d) conspiring to commit any of the above acts. Plaintiff in a private, civil RICO action must also allege that she was injured in his business or property "by reason of" one of the foregoing.(18 USC §1964). Plaintiff has made this allegation in a clear and concise manner, and her complaint cannot be dismissed.

In her complaint and Exhibits 1-13, Plaintiff has provided factual information substantiating the fact that Defendants met the mind of, and put their faith in, the inefficient and untrained hands of defendant Kenneth T. Wasserman and his accomplices, defendant Julia Danger, and Francesca Sabadie who, by joining the enterprise, contributed her property interest in the Taschereau estate, a key and necessary element. Francesca Sabadie was brought in to supply Danger with a property in New York State, so that the jurisdictional issue would not be litigated as a separate issue. This had to be, according to Defendants, absolutely avoided at all times, because all of the Defendants knew that there was no jurisdiction over the objections or over Danger in Surrogate's Court. The fact that Wasserman never filed verified objections in the form of a petition in the Surrogate's Court, as required by the S.C.P.A. §202, §203, §204, §301, §302, and §303 and then made up the matter Danger v Combier and simply had it floated to five courts from 1999 to 2009 without obtaining – or even asking to obtain – jurisdiction, is fatal to the requests of Defendants for this Court to dismiss Plaintiff's complaint. Also, none of the defendants have argued that the unverified Objections were valid, and gave any defendant immunity from prosecution. According to Fed. Rules of Civil Procedure Rule 8 (d), this averment of Plaintiff that there was no jurisdiction assumed over the objections