UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELIZABETH COMBIER,

                    Plaintiff,

          - against -

THE STATE OF NEW YORK, et al.,

                  Defendants.

1:09-cv-05314 (RJH)(FM)

**MEMORANDUM OPINION**
**AND ORDER**

Richard J. Holwell, District Judge:

      Plaintiff Elizabeth Combier brings this action pursuant to the First, Fifth, Seventh, and Fourteenth Amendments of the United States Constitution; 42 U.S.C. § 1983; and a number of other federal and state statutes.  She alleges a wide-ranging conspiracy to deny probate of her late mother's will in order to steal her mother's estate assets.  The defendants include not only her twin sister, her church, its pastor, and its insurance company, but several of the attorneys, court staff, and judges involved with the litigation surrounding her late mother's estate, all of whom she alleges conspired to fabricate a probate case against her, harass her, and ultimately deprive her of property rightfully bequeathed to her in her mother's will.  Several defendants have moved to dismiss ([41], [43], [45], [47], [56], [57], [95]), and plaintiff has moved for a default judgment [77], for sanctions [81], for recusal [31], and to vacate this Court's denial of reconsideration on her prior motion for recusal [79].  This opinion disposes with each of these motions.

1

On August 25, 2010, Magistrate Judge Frank Maas issued a Report and Recommendation (the "Report") recommending that the motions to dismiss be granted and that plaintiff's motions for default judgment, for sanctions, for recusal, and to vacate the denial of reconsideration be denied.   After receiving the Report, plaintiff requested more time in which to file objections, and the Court granted an extension of time to file objections until September 20, 2010.  Within that period plaintiff timely filed her objections to the Report [100].[1]  For the reasons set forth below, the Court adopts the Report and dismisses the complaint in its entirety.

## BACKGROUND

The allegations underlying the complaint are discussed in the Report, familiarity with which is presumed, and which is attached herewith for ease of reference.  A brief summary of the allegations follows here.

### A.  Factual Background

Plaintiff became involved in three litigations in the New York State courts following the death of her mother in March 1998.  In one, plaintiff sued the pastor and associate pastor of the Madison Avenue Presbyterian Church in New York County Supreme Court for wrongfully withholding her mother's ashes from her.  (Cl. ¶ 66.)  Plaintiff had asked the church to keep the ashes, (Cl. ¶ 62), but while they were in the church's possession Wasserman, the attorney for plaintiff's twin sister, called the associate pastor and told him not to return them to plaintiff.  (Cl. ¶ 66.)   The church then retained the ashes for eight days longer than plaintiff wanted it to, giving

---

[1] Any responses to plaintiff's objections were due on September 27, 2010 [99].  Plaintiff has requested an extension of this deadline.  However having received no such request from any defendant, having already extended the schedule once previously, and in light of the fact that the relief granted in this opinion moots any response from defendants, the Court declines to grant plaintiff's request.

rise to the wrongful retention suit, which plaintiff eventually lost after a jury trial.  (Id.)  This and related conduct gives rise to the inclusion of pastor Anderson, the Presbytery of New York City, and Guide one Insurance Company – the presbytery's insurance company, as defendants in this action.

Another litigation arose in March 1998 when plaintiff, represented by Jonathan Landsman, filed a will beneficial to her in Surrogate's Court, New York County, seeking to have it admitted to probate.  (Cl. ¶ 26.)  The case was initially assigned to the Honorable Renee R. Roth.  Although Roth was potentially conflicted out of the case Wasserman contacted a Surrogate's Court employee, Santamarina, and arranged to have the case remain before Judge Roth.  (Cl. ¶ 68.)  Many years later on July 21, 2006, Judge Roth issued an order "stating that [plaintiff's mother] had died 'intestate' and therefore all [estate property] would now be under the control of the Public Administrator, Ethel Griffin."  (Cl. ¶ 73.)  Receipt of this order caused plaintiff to go into heart failure, (Cl. ¶ 74), an injury that underlies the damages elements of the complaint's causes of action.  After this the will contest was transferred to the docket of Troy Webber, the Acting Surrogate.  (Cl. ¶ 78.)  This and related conduct gives rise to the inclusion of Judge Roth, Surrogate Webber, Landsman, Santamarina, and others as defendants in this action.

Yet another litigation arose in December 1999 when Wasserman filed a case captioned *Danger v. Combier* in Supreme Court, New York County.  That case alleged that Combier had fraudulently taken money from a trust beneficial to Combier and her twin sister Danger.  (Cl. ¶ 71.)  The Supreme Court transferred the action to Surrogate's Court to be consolidated with the probate litigation.  (Id.)  It remained consolidated with the probate action until July 2006, when Judge Roth determined that she had no jurisdiction and returned the case to the Supreme Court, where it was assigned to Justice Karla Moskowitz.  (Id.)  In December 2007 Justice Moskowitz

dismissed the case with prejudice, a decision to plaintiff's benefit.  (Id.)  This and related conduct gives rise to the inclusion of Justice Moskowitz as a defendant and constitutes some of the basis for the claims against Wasserman and Judge Roth.

Conduct outside of the courts is relevant to this action as well.  The Complaint alleges, *inter alia*, that Wasserman has frequently harassed and threatened plaintiff; that defendant Lawrence Mark has maintained estate property in his garage without properly preserving it; and that numerous high level New York officials are in on the conspiracy to deprive plaintiff of her due process rights and estate property.

### B.  Procedural History

Plaintiff filed this suit on June 8, 2009, and the Court thereafter referred the case to Magistrate Judge Maas for general pretrial supervision and to report and recommend as to all dispositive motions [16].  Plaintiff filed a motion to oppose that referral on a number of non-meritorious grounds, and the Court denied that motion by order dated October 2, 2009, [20]. Subsequently on November 24, 2009, plaintiff filed the second amended complaint [33]. ("complaint" or "Cl.")  All defendants moved to dismiss except Lawrence Mark, who disputes service of process.  Although Magistrate Judge Maas ordered that the motions to dismiss be resolved before any other matters [75], plaintiff filed a motion for default judgment against Mark on March 23, 2010, [77], a motion to vacate this Court's denial of reconsideration on the recusal motion on May 07, 2010, [79], and a motion to sanction Mark on May 28, 2010 [81].  On August 25, 2010, Magistrate Judge Frank Maas issued his report, and on September 20, 2010, the Court received plaintiff's objections.

## STANDARD OF REVIEW

A district court may designate a magistrate to hear and determine certain motions and to submit to the court proposed findings of fact and a recommendation as to the disposition of the motion. *See* 28 U.S.C. § 636(b)(1). Within fourteen days of service of the recommendation, any party may file written objections to the magistrate's report. *Id.*

Reviewing courts should review a report and recommendation for clear error where objections are "merely perfunctory responses," argued in an attempt to "engage the district court in a rehashing of the same arguments set forth in the original petition." *Vega v. Artuz*, No. 97 Civ. 3775 (LTS), 2002 U.S. Dist. LEXIS 18270, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002); *accord Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985). Where objections to a report are "specific and . . . address only those portions of the proposed findings to which the party objects," district courts should conduct a de novo review of the issues raised by the objections. *Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan*, 806 F. Supp. 380, 381–82 (W.D.N.Y. 1992); *see also* Fed. R. Civ. P. 72(b).

## DISCUSSION

Plaintiff objects to the Report on four principal grounds: (1) that Judge Maas incorrectly found judicial and quasi-judicial immunity to apply to cases where jurisdiction was lacking, (2) that plaintiff has not been allowed to address her grievances before an impartial tribunal despite relying on the law and timely filing her papers, (3) that Judge Maas incorrectly found the factual support in the complaint inadequate to plausibly plead the causes of action asserted, and (4) that Judge Maas has denied plaintiff her due process rights. The Court has conducted a de novo

review as to these issues and as to the particular sub-issues raised by plaintiff, and addresses each in turn.

### A.   Judicial Immunity

Plaintiff raises a number of objections to the Report's judicial immunity findings.   The common law has long immunized judges from damage claims arising out of their judicial acts. *See Tucker v. Outwater*, 118 F.3d 930, 932 (2d Cir. 1997) (tracing common law origins of judicial immunity).  The test for judicial immunity is straightforward, "[t]he only prerequisites to judicial immunity are that the judge not act in the clear absence of all jurisdiction and that he or she be performing a judicial act or one which is judicial in nature." *Pollack v. Nash*, 58 F.Supp.2d 294, 303 (S.D.N.Y. 1999) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L.Ed. 2d 331 (1978).

There are great costs to the doctrine of judicial immunity: it leaves an individual honestly wronged by judicial malfeasance without recourse, and a judge wrongfully accused by a former litigant with no means of disproving the allegations against him or her.  However those costs are outweighed by an important benefit, it leaves judges free to make decisions without worrying about the potential for legal liability.  "Although unfairness and injustice to a litigant may result on occasion, 'it is a principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles v. Waco*, 502 U.S. 9, 10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (quoting *Bradley v. Fisher*, 13 Wall. 335, 347, 20 L.Ed. 646 (1872)).  As a result judicial immunity applies regardless of the decision made, whether it is errant, or malicious, or otherwise.  *See Tucker v. Outwater*, 118 F.3d 930, 932 (2d Cir. 1997) ("The principle of judicial immunity recognizes that a judge may err.  But it is better

for a judge when exercising the discretion inherent in his judicial power to risk some error and possible injury from such error than not to decide or act at all.") (quoting *Green v. Maraio*, 722 F.2d 1013, 1017 (2d Cir. 1983)); *Pollack v. Nash*, 58 F. Supp. 2d 294, 303 (S.D.N.Y. 1999) ("[judicial immunity] is so entrenched that it extends to cases where the judge acted in error, maliciously, or in excess of his or her authority").

Most of plaintiff's objections to judicial immunity are premised on the idea that jurisdiction was lacking in the prior proceedings, citing case-law related to jurisdiction as a procedural matter.  These arguments are all mistaken in one crucial respect: the relevant test for judicial immunity is not whether one kind of jurisdiction was technically lacking as a matter of procedure, but rather whether the judge was acting in the "clear absence of all jurisdiction," *Tucker v. Outwater*, 118 F.3d 930, 932 (2d Cir. 1997).  Whether one kind of jurisdiction or another is lacking is a very different question from whether *all* jurisdiction is *clearly* absent.  *See* *Stump v. Sparkman*, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed. 2d 331 (1978) ("because some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction … the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge").

1.  *Danger v. Combier* before Justice Moskowitz

Plaintiff objects that Justice Moskowitz was acting in the clear absence of all jurisdiction in *Danger v. Combier* because she eventually granted plaintiff's motion to dismiss on the grounds that subject matter jurisdiction was lacking.  (Pltfs Objections 11.)  However there is no dispute that she had authority to dismiss the case.  Broadly construing jurisdiction, Justice Moskowitz had a limited jurisdiction to decide the issue of subject matter jurisdiction once raised.  Moreover the issue of jurisdiction is a complicated and difficult one, so it cannot be

7

inferred from a Judge's eventual determination that she lacks jurisdiction that she clearly lacked it throughout the litigation leading up to that point.  Accordingly Justice Moskowitz's finding that subject matter jurisdiction was lacking does not overcome judicial immunity for *Danger v. Combier*.

Plaintiff also contends that personal jurisdiction was lacking in *Danger v. Combier* over both her and her twin sister, Danger.  She contends that jurisdiction was lacking over Danger since Danger "had no standing as a Trustee, signed an agreement with Plaintiff that ended the Trust and closed the account forever in 1999, and never contested the agreement's terms."  (Id.) However whether Danger had standing or whether the case had any merit have nothing to do with the issue of personal jurisdiction: since Danger filed the suit she consented to the exercise of personal jurisdiction over her.  Plaintiff also asserts that there was no jurisdiction over her person, but she unquestionably appeared.  Accordingly personal jurisdiction could not have been clearly absent in *Danger v. Combier*.

Plaintiff objects that judicial immunity is overcome because *Danger v. Combier* was "frivolous, not based on an existing Trust, and without Bankers Trust, the Trustee, named as a Defendant."  (Id. at 12.)  However an exception to judicial immunity is only available if (1) the court is acting in the clear absence of all jurisdiction, or (2) the act is not judicial or judicial in nature.  Frivolity, existence of a trust, and the proper naming of defendants are not, standing alone, relevant to whether jurisdiction is clearly lacking or whether an act is judicial. Accordingly this argument does not defeat judicial immunity.

Plaintiff objects that "the unverified Objections to Probate (2000-2009) does not give jurisdiction."  (Id. at 13.)  However Judge Maas does not rely on the unverified objections to probate in his discussion of judicial immunity; indeed they have nothing to do with the issue of

8

jurisdiction.  Rather the Report explains at length why their non-verification has no impact on

jurisdiction one way or the other.  (Report at 20-21, n. 15.)  Accordingly this argument does not

defeat judicial immunity.

2.   Probate before Judge Roth

Plaintiff objects that Judge Roth was not engaged in a judicial act when she issued her

July 19, 2006 order because that order mistakenly stated that Taschereau died "intestate."

However judicial immunity applies whether or not a judge has made a mistake.  *See Tucker v.*

*Outwater*, 118 F.3d 930, 932 (2d Cir. 1997); *Pollack v. Nash*, 58 F. Supp. 2d 294, 303 (S.D.N.Y.

1999).  Thus this argument does not defeat judicial immunity.

**B.   Opportunity to Address Grievances Before an Impartial Tribunal**

Heading III of plaintiff's objections asserts that "plaintiff has never been allowed to

address her grievances before an impartial tribunal despite her reliance on the law and her filing

the proper papers in a timely fashion."  (Pltfs. Objections at 22-28.)  For the most part this

section reiterates the judicial immunity arguments discussed above.  (Pltfs. Objections at 23-24

(reiterating Judge Roth clerical error argument); (Pltfs. Objections at 24-28) (reiterating

unverified objections to probate argument).  Those arguments do not defeat judicial immunity for

the reasons discussed above.  This section of plaintiff's objections also raises the doctrines of

laches and equitable estoppel, but without reference to how they are relevant to this proceeding.

(Pltfs Objections at 25-26.)  These objections thus fail to expose any error in the Report.

The gist of plaintiff's objection in this section—that plaintiff has not been permitted to

address her grievances before an impartial tribunal—is a due process argument.  Plaintiff's due

process objections are discussed below.  In any event plaintiff has been permitted to address her

grievances before an impartial tribunal.  Plaintiff wrote a lengthy complaint, Magistrate Judge

Maas carefully reviewed it as well as her defenses of that complaint and wrote a thoughtful 44 page Report and Recommendation, plaintiff objected to that Report, and the Court is now reviewing those objections. She has thus addressed her grievances before two impartial tribunals.

### C.   Rule 8

Plaintiff next objects to Judge Maas' finding that the complaint fails to plausibly plead a conspiracy between private individuals and state actors sufficient to subject the private individuals to § 1983 liability. (Pltfs. Objections 28-38). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (abrogated in part by *Twombly*)). In *Twombly*, the Supreme Court held that to satisfy this standard, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *See Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (May 18, 2009). Nonetheless, *pro se* submissions are entitled to "special solicitude," *Triestman v.. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir.2006), and even after *Twombly* and *Iqbal* courts "remain obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009). Even a *pro se* Complaint however must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the

misconduct alleged," *Ashcroft v. Iqbal*, 129 S.Ct. at 1949.  *See Fuentes v. Tilles*, No. 09-2954-cv, 2010 WL 1838702 (2d Cir. May 10, 2010) (quoting *Iqbal* and dismissing *pro se* complaint for failure to state a claim).

Having reviewed the allegations in the complaint de novo, the Court finds that plaintiff has not met her burden of plausibly pleading a conspiracy between state and private actors.  The conduct plaintiff cites in support of a conspiracy—issuance of orders, demands to appear for hearings, phone calls to discuss submissions, mistaken acceptance of unverified objections, changing the caption in a case—is far more consistent with the manner in which lawyers and judges conduct a case than it is with the way conspirators would be likely to rob estate property.

The only fact that would better support bias against plaintiff than the normal conduct of litigation is plaintiff's description of the January 02, 2007, phone call between Wasserman and Combier.  As plaintiff describes it, following this harassing phone call Detective Ahearn told plaintiff that "a judge…namely Karla Moskowitz, was paying Wasserman to harass plaintiff." (Pltfs. Objections 32.)  However even if true this fact alone would not render plausible the proposition that the judicial system, plaintiff's twin sister, her attorneys, and her church are involved in a conspiracy to rob her of estate assets.  Moreover the phone call was not as plaintiff says it was.  Plaintiff attached her recording of the conversation with Detective Ahearn to her opposition papers, and he simply does not say that Justice Moskowitz was paying Wasserman to harass plaintiff, only plaintiff says that.  This phone call thus does nothing to render plausible plaintiff's conclusory allegations of conspiracy.

11

### D.   Procedural Errors and Denial of Due Process

Plaintiff next objects that "this Court has created procedural errors that are fatal to a fair

hearing for plaintiff and further the denial of due process that she cited in her complaint." (Pltfs.

Objections 38.)  However none of the judicial acts she objects to denied her due process.

Plaintiff's first procedural objection involves her assertion that Justice Moskowitz paid

Wasserman to harass her.  As an aside in the Report, Judge Maas states that the claim "probably

rises to the level of being sanctionable."  (Report at 27.)  Plaintiff objects that this comment "is

simply outrageous."  (Pltfs. Objections at 39.)  However since the Report does not sanction or

even recommend sanctioning plaintiff, the comment is dicta and therefore cannot implicate a

protected liberty or property interest.  *See Rolon v. Henneman*, 517 F.3d 140, 148 (2d Cir. 2008)

(noting that "allegedly defamatory statements harming a person's reputation [do] not deprive that

person of any liberty or property interests protected by the Due Process clause").

Plaintiff's second procedural objection is that Judge Maas "returned the tape to Plaintiff

saying that he would not accept any evidence that was not written."  (Pltfs. Objections 39.)  Yet

the Report indicates that Judge Maas in fact listened to the tape in question.  (Report at 27

(describing contents of recording).)  Moreover plaintiff was not denied any opportunity to

present evidence unless Judge Maas also refused to receive a transcript or some other facsimile

of that tape, an allegation plaintiff has not made.

Plaintiff's third procedural objection is that Judge Maas improperly denied plaintiff her

right to receive a default judgment against defendant Mark.  (Pltfs. Objections 39.)  However

Judge Maas did not deny her any right to move for default, he merely insisted that such motions

wait until after the motions to dismiss are resolved.  ([75] (replying to request to file motion for

default judgment by stating "[g]iven the volume of motion[s] in this case, we need to deal with

applications in a logical order. After I deal with the motion to dismiss, I will deal with any remaining issues in due course.")

Accordingly having reviewed de novo plaintiff's procedural objections the Court finds no errors in the Report.

**CONCLUSION**

Plaintiff has made only perfunctory objections to the Report's recommendations as to her motion for default judgment [77], for sanctions [81], for recusal [31], and to vacate this Court's denial of reconsideration on her prior motion for recusal [79]. The Court finds no clear error as to these or any of the other aspects of the Report to which plaintiff has either not objected or made only perfunctory objections.

The Report also recommends that leave to amend be denied as futile. (Report at 41.) Because plaintiff's objections to this recommendation merely reiterate her request to replead and the legal standard, (Pltfs. Objections 48), they are merely perfunctory and the Court reviews them for clear error. *Vega v. Artuz*, No. 97 Civ. 3775 (LTS), 2002 U.S. Dist. LEXIS 18270, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002). Finding none, the Court adopts this portion of the Report. Even if the Court reviewed this matter de novo it would not grant leave to replead; plaintiff's claims are so implausible, the applicability of judicial immunity so clear, and her many threshold barriers so high that amendment would be futile.

For the foregoing reasons the Court adopts the Report in its entirety. Defendants' motions to dismiss ([41], [43], [45], [47], [56], [57], [95]) are granted, and the federal and constitutional claims in the complaint are dismissed with prejudice. The Court declines supplemental jurisdiction over plaintiff's state law claims. Furthermore plaintiff's motions for

13

default judgment, [77], for sanctions, [81], for recusal, [31], and to vacate the Court's denial of reconsideration, [79] are denied.  The clerk is directed to close this case.

SO ORDERED.

Dated: New York, New York
       September 29, 2010

_____
Richard J. Holwell
United States District Judge

14