UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 10-14-2010

--------x

ELIZABETH COMBIER,

                Plaintiff

DOCKET NO. 09 CIV 5314 (RJH)

-against-

NOTICE OF MOTION
SUPPORT OF CONSIDERING
THE MEMORANDUM AND ORDER
DISMISSING PLAINTIFF'S
SECOND AMENDED
COMPLAINT AND
DISQUALIFYING
JUDGE HOLWELL AS A
RESULT OF CONFLICTS
OF INTEREST

THE STATE OF NEW YORK, SUPREME COURT OF THE STATE OF NEW YORK APPELLATE DIVISION FIRST DEPARTMENT, HON, JOHN T. BUCKLEY, in his individual and official capacity, HON. KARLA MOSKOWITZ, in her individual and official Capacity, ERIC REESE, in his individual and official Capacity, LAUREN HOLMES, in her individual and official capacity, DAN RAMOS, in his individual and official capacity, ELIOT SPITZER, in his individual and official capacity, as the former Attorney General of the State of New York, HON. JONATHAN LIPPMAN, in his individual and official capacity as the former Presiding Judge of the New York Supreme Court, Appellate Division, First Department, HON RENEE R. ROTH, in her individual and official capacity as the former Manhattan Surrogate Court Judge, HON. TROY WEBBER, in her individual and official capacity, BARBARA LEVITAN, in her individual and official capacity, MARIA SANTAMARINA, Esq., in her individual and official capacity, ETHEL GRIFFIN, in her individual and official capacity, PETER SCHRAM, in his individual and official capacity, DR. FRED ANDERSON, in his individual and professional capacity, KENNETH WASSERMAN, in his official and individual capacity, FRANCESCA SABADIE, individually, LAWRENCE MARK, individually, JULIA DANGER, alleged Objectant, ELI UNCYK, in his individual and professional capacity, JEFF KOFSKY, in his individual and professional capacity, THEODORE PRUDON, in his individual and professional capacity, GUIDE ONE INSURANCE COMPANY,

                Defendants

--------x

PRO SE OFFICE

1

**PLEASE TAKE NOTICE** that upon the accompanying Memorandum of Law filed on October 14, 2010 and upon the exhibits attached thereto and the pleadings herein, the Plaintiff pro se will move this Court, before Judge Richard Holwell, United States District Judge, at the United States Courthouse, 500 Pearl Street, New York New York, for reconsideration or re-argument of the Memorandum and Order entered on September 30, 2010 pursuant to Local Civil Rule 6.3. I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, NY
October 13, 2010

Elizabeth Combier
315 East 65th Street
New York, NY 10065

Copies sent by Priority mail to:
Jeffery H. Sheetz
Greenfield, Stein & Senior, LLP
600 Third Avenue
11th Floor
New York , NY 10016

Monica Connell
Attorney General of the State of New York
120 Broadway
New York, NY 10004

Kenneth Wasserman
350 Fifth Avenue Suite 4810
New York, NY 10118

Eli Uncyk and Jeffrey Kofsky
555 Fifth Avenue, 18th fl
New York, NY 10017

Julia Danger

2

```
47 Avenue Mathurin Moreau
Paris 75019 FRANCE

Lawrence Mark
21 Quaker Ridge Road
Croton-on-Hudson NY 10520

Francesca Sabadie
1 Walworth Avenue
Scarsdale, NY 10583

Carl J. Schaerf
Schnader Harrison Segal & Lewis LLP
Attorney for Guide One Insurance Company
140 Broadway, Suite 3100
New York, NY 10005-1101

Jonathan Landsman
260 Madison Avenue, 17th fl.
New York, NY 10016
```

Index No. 09-CIV-5314

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

ELIZABETH COMBIER,
Plaintiff

-against-

THE STATE OF NEW YORK, SUPREME COURT OF THE STATE OF NEW YORK APPELLATE DIVISION FIRST DEPARTMENT, HON, JOHN T. BUCKLEY, in his individual and official capacity, HON.KARLA MOSKOWITZ, in her individual and official Capacity, ELIOT SPITZER, in his individual and official Capacity, ERIC REISS, in his individual and official Capacity, LAUREN HOLMES, in her individual and official capacity, DAN RAMOS, in his individual and official capacity, HON. JONATHAN LIPPMAN, in his individual and official capacity as the former Presiding Judge of the New York Supreme Court, Appellate Division, First Department, HON RENEE R. ROTH, in her individual and official capacity as the former Manhattan Surrogate Court Judge, HON. TROY WEBBER, in her individual and official capacity, BARBARA LEVITAN, in her individual and official capacity, MARY SANTAMARINA, Esq., in her individual and official capacity, ETHEL GRIFFIN, in her individual and official capacity, PETER SCHRAM, in his individual and official capacity, DR. FRED ANDERSON, in his individual and professional capacity, KENNETH WASSERMAN, in his official and individual capacity, FRANCESCA SABADIE, individually, LAWRENCE MARK, individually, JULIA DANGER, individually, ELI UNCYK, in his individual and professional capacity, JEFF KOFSKY, in his individual and professional capacity, JONATHAN LANDSMAN, in his individual and professional capacity, DOROTHY HENDERSON in her individual and professional capacity, GUIDE ONE INSURANCE COMPANY, PRESBYTERY OF NEW YORK CITY,

Defendants

**MEMORANDUM OF LAW IN SUPPORT OF RECONSIDERING THE MEMORANDUM AND ORDER DISMISSING PLAINTIFF'S SECOND AMENDED COMPLAINT AND DISQUALIFYING JUDGE HOLWELL AS A RESULT OF CONFLICTS OF INTEREST**

Elizabeth Combier
Plaintiff Pro Se
Editor, Parentadvocates.org
Editor, NY Court Corruption
315 East 65th Street
New York, NY 10065
212-794-8902

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................p. 2

PRELIMINARY STATEMENT...........................................................P.5

JURISDICTION....................................................................................P.5

MOTION FOR RECONSIDERATION
PURSUANT TO LOCAL CIVIL RULE 6.3. ......................................P.6

DISQUALIFICATION OF JUDGE HOLWELL FROM THE POSITION
OF TRIER OF FACT IN THE CASE CITED HEREIN......................p. 16

# TABLE OF AUTHORITIES

Local Civil Rule 6.3.............................................................................p. 6

Cordero v. Astrue, 574 F. Supp. 2d 373, 379-80 (S.D.N.Y. 2008)......p. 6

Virgin Atl. Airways, Ltd. V Nat'l Mediation Bd. 956 F. 2d 1245, 1255 (2d cir 1992)

Weissman v Fructman, 658 F. Supp. 547, 548 (SDNY 1987)............p. 6

Shrader v CSX Transp. Inc..................................................................p.7

Shearard v. Geithner............................................................................p.7

Danger v Combier................................................................................p.7

SCPA Sections 203, 204, 301, 303.....................................................p.9

SCPA Article 10 Sections 1001, 1002, 1003, 1004, 1005, 1006, 1007.............p. 11

Liteky v U.S..........................................................................................p.16

Liljeberg v Health Services Acquisition Corp.....................................p.16

2

United States v Balistrieri....................................................................p.16

28 U.S.C. Section 455..........................................................................p.16

Pfizer Inc. v Lord.................................................................................p.16

Levine v United States.........................................................................p. 16

Offutt v United States...........................................................................p.16

Taylor v O'Grady..................................................................................p. 17

United States v Sciuto...........................................................................p. 17

Tennessee Coal & Iron, Co. v George....................................................p. 20

Marshall v Marshall..............................................................................p.20

## PRELIMINARY STATEMENT

Elizabeth Combier, Plaintiff Pro Se, respectfully submits this Memorandum of Law in support of (1) reconsideration Judge Richard J. Holwell's Memorandum and Order ("Memorandum") entered September 30, 2010, and (2) invalidating this Memorandum and disqualifying Judge Richard J. Holwell from the case at bar due to numerous conflicts of interest, prejudice, and denial of Constitutional rights of Plaintiff.

## JURISDICTION

Plaintiff files this Motion to Dismiss and Vacate the Memorandum and Order of Judge Holwell pursuant to Local Civil Rule 6.3 which gives her the right to challenge any determination by a judge if filed with the Pro Se Office and served on the opposing parties within ten (10) business days of the date of entry on the docket of the order being challenged. (Pro Se Manual, "Appeals", p. 133). This has been done, after calling the pro se desk on Friday, October 8, 2010, at approximately 4:00PM to make sure that Monday 10/11/10 is considered a holiday an exception to the 10 business-day rule, and therefore Plaintiff could file on Thursday October 14, 2010, ten business days after the entry of the Memorandum, September 30, 2010. Therefore this Motion, having been served by first class mail on all Defendants and their Attorneys, is timely and must be considered by this court.

Plaintiff's motion is made pursuant to Local Civil Rule 6.3 and pursuant to the errors made in both fact and law by Holwell as he deliberately overlooked and ignored the RICO enacted by Defendant Kenneth Wasserman and relied upon by all other Defendants from March 1998 until today, documents submitted with the Second Amended

4

Complaint, the request for Default Judgment [77], for sanctions [81], for recusal [31], kept Defendants Mark and Danger off of the docket sheet as Defendants, kept a letter sent to him by Defendant Danger in his chambers as well as her papers and permitted alterations of the docket sheet of the case, all of which add up to this Court's further denial of Plaintiff's Constitutional rights. Plaintiff states that the Memorandum shows bias, prejudice against Plaintiff and support and favoritism for the acts of Kenneth Wasserman as he, with the collaboration of the state actors named in the case at bar, stole the Julia Taschereau property and handed it over to the State of New York maliciously and without justification.

## MOTION FOR RECONSIDERATION PURSUANT TO LOCAL CIVIL RULE 6.3.

"The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"Cordero v. Astrue, 574 F. Supp. 2d 373, 379-80 (S.D.N.Y. 2008) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). Motions for reconsideration shall set forth "concisely the matters or controllingdecisions which counsel believes the court has overlooked." see also Weissman v. Fruchtman, 658 F. Supp. 547, 548 (S.D.N.Y.1987) (stating that "[m]otions for reargument are granted when new facts come to light or it appears that controlling precedents were overlooked"). Adequate grounds for reconsideration are present where there has been "an intervening change of controlling law," new evidence has become available, or there is a "need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir.1992) (citation omitted). Reconsideration should occur if the moving party can point to controlling

5

decisions or data that the court overlooked, and which the movant could reasonably believe would have altered the court's original decision. Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also Shearard v. Geithner, No. 09-CV-0963, 2010 WL 2243414, at *1 (E.D.N.Y. May 30, 2010).

The Memorandum and Order ignores the following causes of action brought to this Court by Plaintiff:

> (a) Defendants cannot obtain immunity for pursuing the case *Danger v Combier* through five (5) courts of the Unified Court System and after the case was dismissed in the Supreme Court in 1999, as the agreement ("SAC" Exhibit) signed by Plaintiff Combier and Defendant Danger in 1999 ending the Strauss Trust at Banker's Trust and releasing Plaintiff and the Bank "from all liability or damages for any monies left in the Trust after March 16, 1998" was never vacated or overturned. The Memorandum ignores the provisions of the 1999 agreement and confers immunity anyway, on all Defendants, clearly in error. The telephone conversation with Detective Ahearne on January 2, 2007 shows that the Court misinterprets the very words "Moskowitz is paying Wasserman" to the extent that there is no protection for Plaintiff's assertion of fraud and RICO. Wasserman called Plaintiff that day to force her into a deposition on the matter Danger v Combier, which, according to the 1999 agreement, was not validated as existing at the time. (See attached papers showing that Moskowitz' Court never took personal jurisdiction over Plaintiff as she was never served, and the 1999 agreement with Julia Danger was never invalidated).

6

(b) Defendants cannot obtain immunity for acting *ultra vires* and harassing Plaintiff for twelve years when the probate of the Will should have occurred in 2001 after all the 1404s were completed, and no information was ever submitted by Wasserman to any court that might support undue influence; Defendant Danger, in her 2000 deposition ("SAC") stated on the record and under oath that her mother, Julia Taschereau, was of sound mind in 1997, was never without competency, and Danger objected to the Objections, saying that they "weren't true".

(c) The law of this case was that the Surrogate's Court had jurisdiction to probate – or not – the 1997 Will of Julia Taschereau based upon relevant and material facts and documentation presented as to the validity of the Will and competency of Julia Taschereau when she signed it. The Court cannot give immunity to Defendants for nullifying the provisions clearly written into the 1997 Will while no information was ever presented by Wasserman to invalidate the Will. Judge Roth simply would not probate the Will and stole the estate instead. All the Defendants supported this act of fraud and conversion, without immunity to do so. The Court recites SCPA §203 only partially, in order to obtain immunity for the State actors over the unverified paper Wasserman called "Objections to Probate". The entire clause, SCPA §203 **Jurisdiction of parties and subject matter** is as follows:

> "The Court obtains jurisdiction in every case to make a decree or other determination by the existence of the jurisdictional facts prescribed by statute. The jurisdiction of the court is exercised by the commencement of a proceeding in the court. All proceedings are special proceedings and are commenced by filing a petition. Personal jurisdiction of parties is obtained by service of process upon the parties…"

7

And, even more important to the matter cited herein is SCPA §204.

### SCPA §204. Presumption of jurisdiction

"Where the jurisdiction of the court to make a decree or other determination is drawn in question collaterally, the jurisdiction is presumptively and in the absence of fraud or collusion, conclusively established by an allegation of the jurisdictional facts contained in a verified pleading. Jurisdiction of the parties is presumptively proved by a recital to that effect in the decree."

**SCPA §301** states that "pleadings shall consist of the petition, answer or objections and account." (**SCPA §304** lists the contents of such a petition).

### SCPA §303. Verification

All pleadings shall be verified in the manner provided by CPLR 3020.

Defendants permitted Wasserman to send Plaintiff an unverified paper labeled "Objections To Probate" that were never in the form of a petition, not verified until the first day of trial on August 4, 2009, and the party making the objections, Defendant Danger, denied the truth of these objections in August 2000 under oath at her deposition. (See testimony attached to Plaintiff's "MOTION OBJECTING TO DEFENDANTS'MOTIONS TO DISMISS", Danger depositions August 3, 8 2000).

The Court clearly ignored these laws which protect Plaintiff from the actions she complaints about.

(d) Plaintiff asserted into her defense of obtaining the property bequeathed to her the fact that Judge Roth and Judge Webber both gave the right to Lawrence Mark to hold the property in his garage for twelve years, and counting. It is a triable issue of fact whether or not either Judge had this authority, to give this right of temporary ownership, until after the 1997 Will was invalidated. Julia Taschereau never met Lawrence Mark, he is not a beneficiary to any of the Taschereau estate,

8

and he has no right to have the property under his control. The Will was never invalidated, and Plaintiff's extensive documentation on the abusive actions of her sister Danger towards their mother, as well as the actions of Taschereau on the day she died – running the concert at the Church, Madison Avenue Presbyterian – show to all 300+ attendees at the concert on March 15, 1998 that Julia Taschereau was intellectually competent, aware of her surroundings, and capable of understanding everything that was going on around her, thus these facts validate the terms of the Will yet the Court ignores all of it. ("SAC") Plaintiff brought to this court her defense of latches, saying that even if Wasserman obtained the court's approval and was permitted to hand in an unverified piece of paper saying there were objections, the probate of that Will has been delayed twelve years and counting, on the grounds of making these objections true, too many years for Plaintiff's rights to assert the truth of the Will (the property has been destroyed and decimated). ("SAC")

(e) The order of Judge Roth on July 19 2006 saying that the power of administrating the estate of Julia Taschereau would be given to Ethel Griffin, the Public Administrator, due to Taschereau dying "intestate" was deliberately and maliciously done in order to steal the property bequeathed to Plaintiff. ("SAC") The Court attributed "error" to Plaintiff as to the description of this order, when indeed, it was Defendants, in their Motions for Summary Judgment, who wrote that this was a "clerical error". It is a triable issue of fact whether or not the order saying that Julia Taschereau died "intestate" was a clerical error or not. Certainly the invalidation of the Will by Judge Roth, Santamarina, Levitan, Griffin, Danger,

9

Wasserman and the other Defendants by issuing an order for four days saying it never existed at all is not an act covered by immunity. The consequence was to put Plaintiff in the hospital near death, Mark was "given" the right to decimate the property in the garage, and this Court supports these actions. The Court clearly erred in giving immunity to the Defendants for the mail fraud committed when they knowingly sent the fraudulent order announcing that Julia Taschereau had died "intestate". The Court also ignored the following laws cited in SCPA

**Article 10. INTESTATE ADMINISTRATION:**

**§1001, 1002,1003, 1004, 1005, 1006, AND 1007**

(f) This Court ignores the fact that Defendants wanted to harm Plaintiff, and ignored the harassing telephone calls from Wasserman and Santamarina, telling her [Plaintiff] that she would be placed into two trials, one for the probate of the Will, and the other for stealing from the Trust – when no court ever took subject matter jurisdiction over *Danger v Combier*, and certainly an unverified piece of paper called "Objections To Probate" do not confer judicial immunity for adhering to unsubstantiated conclusions. ("SAC", SCPA §§203, 204). See attached document, a letter from Wasserman to Plaintiff in 1995 threatening her and telling her that Mary Santamarina wanted a conference call.

(g) The removal of Plaintiff as administrator of the Estate is also a triable issue of material fact, and it must be brought to a jury as to why she was removed, and the estate was not given to her sister or the substitute executor Kenneth Brown, to administrate. The order was in force only approximately four (4) days ("SAC"). The testimony of the four witnesses at the Will signing ceremony were all clearly

10

in support of Julia Taschereau's desire to have the 1997 Will validated by her signature, and that she wanted her daughter Elizabeth Combier to receive her apartment. Plaintiff submitted to this Court the hospital report showing that on July 25, 1997, Defendant Danger threw her mother to the floor and harmed her, and this act convinced Julia Taschereau that she never wanted to be alone with this daughter [Danger] ever again, and would change her Will so that Julia Danger would not get the apartment at 201 East 77th Street after she died, but that Plaintiff would live there.

(h) Judge Holwell states that Plaintiff's lawyer in 1998 was Jonathan Landsman. This is clearly an error. Her Attorneys were Eli Uncyk and Jeffrey Kofsky. Landsman and Roth tried to extort money from Plaintiff by ordering her to pay him for billing her for the fraud on the Surrogate's Court pursued by him under Danger v Combier. When she refused, Roth retaliated against Plaintiff by giving the administrator position to Ethel Griffin. Landsman now shares an office with Roth.

(i) Both the Memorandum and the Recommendation omit mention of the acts of Defendant Kenneth Wasserman, and this is the most important error of both Holwell and Maas. It was Wasserman who started harassing Plaintiff on March 17, 1998, and has not stopped, nor has he been stopped by any Court or member thereof. It was Wasserman who made a deal with Mary Santamarina in 1999 to keep the case of the probate of the 1997 Will under Judge Roth, although Santamarina, Levitan, and all the personnel of the Surrogate Court – including Judge Roth – knew that there was a conflict with his naming Henry Sheinkopf as a co-conspirator with Plaintiff. Sheinkopf told Plaintiff in 2005 that he was the

11

campaign manager for Roth, and knew Santamarina, Levitan and Griffin very well. Sheinkopf worked with Ethel Griffin as well. It was Wasserman who stole all the valuable property from the Taschereau apartment at 201 East 77th Street, apt. 18D, on or about July 26, 1998, and took parts of it to Croton-on-Hudson to store with Lawrence Mark in his garage, without the knowledge and consent of the estate administrator, Plaintiff Combier. It was Wasserman who tried, by keeping the 1404 depositions and the 2000 deposition of Julia Danger, out of the Surrogate's Court records room after 2001, to the detriment of Plaintiff, to keep the Will from being probated, and was allowed to perpetrate this fraud by his collaborators, the Defendants cited in this case. It was Wasserman who made up the theft of Plaintiff from the Banker's Trust account held by Banker's Trust AND Co-Trustee Julia Taschereau, and pursued her for nine years under the false caption of "Danger v Combier".

Yet neither Holwell nor Maas address these acts, or the fact that Peggy Mundy told Plaintiff in 2001 that Wasserman was working for Guide One Insurance Company in the "interests of the Church." She, Mundy, offered Plaintiff $1 million to go away.

## THE HOLWELL MEMORANDUM GIVES IMMUNITY TO DEFENDANTS FOR EMPOWERING WASSERMAN AS HE COMMITTED FRAUD ON THE STATE

In 1999 Plaintiff and her sister Defendant Danger signed an agreement to end the Samuel Strauss Trust held at Banker's Trust, and the terms of the agreement were that Danger release the Bank and Plaintiff from any and all liability or damages after March 16, 1998. (Document submitted with Second Amended Compliaint, "SAC")

12

Judge Holwell never addresses the actions of Wasserman in the Memorandum, and how he, working with all the Defendants, both State and non-State actors, was able to steal the property from inside the Taschereau apartment and protect Danger from any restitution for her stealing the valuable letters out of the Taschereau apartment in 1997 while her mother was alive.

The Court has clearly overlooked several laws and facts that are keys to the Second Amended Complaint: (1) no court ever took jurisdiction over Plaintiff or the subject matter in the case *Danger v Combier* until Magistrate Maas wrote in his recommendation to dismiss ("Recommendation") that:

"Combier's allegations against Justice Moskowitz include claims that she acted in the Danger v Combier case without jurisdiction, violated Combier's rights in connection with that case, and threatened Combier with contempt (See SAC ¶20, 71). Once again, because these allegations all relate to a judicial matter over which Justice Moskowitz was presiding, there is no question that she undertook the actions complained of in her judicial capacity. Combier also is clearly wrong to the extent that she alleges that Justice Moskowitz has no jurisdiction." (Recommendation, pp. 21-22)

Yet Justice Moskowitz in her decision to dismiss Danger v Combier ((Index no. 606259/1998) recognized that the matter had been dismissed by New York State Supreme Court Judge Beatrice Shainswit in 1999 because the court had no subject matter jurisdiction, the complaint (that Wasserman filed) alleges a derivative claim on behalf of Bankers Trust Company as trust but fails to acknowledge that the damages which Plaintiff [Danger] seeks to recover are for the benefit of an entity other than Plaintiff..." Then Moskowitz cites Judge Roth's decision to send the matter back to Supreme Court due to the Surrogate's Court lack of subject matter jurisdiction, in recognition of the earlier dismissal by Shainswit and despite the material and relevant fact that there was no trust to remedy any of Danger/Wasserman's claims, as the trust agreement between

13

Danger and Combier ended the Samuel Strauss Trust in 1999, and this was never refuted by anyone, at any time. The Moskowitz decision was an integral part of the SAC, yet both Judge Maas and Judge Holwell found subject and personal jurisdiction in the alleged [by them] judicial proceedings to give judicial immunity where there was none.

Moskowitz wrote in her decision about Judge Roth's order:

"On July 19, 2006 [submitted by Plaintiff in the SAC as Roth order July 24, 2006] the Surrogate returned this action to the Supreme Court, New York County. The Surrogate held that 'the relief sought in the complaint as framed...can affect neither decedent's estate nor the now terminated trust....since such relief would be obtained only against Elizabeth [Combier] individually. Moreover, even if Julia's [Danger] pleading could be viewed as seeking damages from Elizabeth on decedent's behalf, the court still would not have subject matter jurisdiction.....the action is between living parties and is therefore not within this court's jurisdiction." (Moskowitz decision, pp.3-4)

Moskowitz continues:

"I find that Plaintiff [Danger] does not have standing to bring this action, for any recovery would belong to the trust and the Trustee, Banker's Trust. As Justice Shainswit held in her recalled decision the claims are derivative on behalf of the trustee and plaintiff [Danger] alleged no demands on the trustee to make the claims itself. None of the causes of action are plaintiff's to assert directly. All damages, if proven, inure to the benefit of the Trust. That defendant, in a stipulation dated April 14, 2000, waived her right to assert as a defense or raise in any form that Banker's Trust should have been named as a party is irrelevant. Further, as the Surrogate also recognized, the claims Danger makes here are not hers individually to make.
The Surrogate also noted that Plaintiff released the trustee from liability in connection with its acts as fiduciary. In that same "Instrument Settling Account" ("Instrument" – see SAC) of the Trustee Bankers Trust, plaintiff released defendant "from all liability or damages for any monies left in the Trust after the March 16, 1998, the day of death of our mother....." and that she has examined the "account of proceedings, in all respects approve, ratify and confirm the same, as a final and conclusive account stated with respect to the period from June 23, 1995 to August 19, 1998 and waive further accounting for said period." Plaintiff executed the Instrument on June 4, 1999. The Instrument recited in it that the Surrogate's Court had judicially settled and allowed the previous accountings.
The remainder of the motion, including a request for sanctions, is denied" (See attached)

## DISQUALIFICATION OF JUDGE HOLWELL FROM THE POSITION OF TRIER OF FACT IN THE CASE CITED HEREIN

14

Federal law requires the automatic disqualification of a Federal judge under certain circumstances. In 1994, the U.S. Supreme Court held that **"Disqualification is required** if an objective observer would entertain reasonable questions about the judge's impartiality. If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge **must be disqualified."** [Emphasis added]. Liteky v. U.S., 114 S.Ct. 1147, 1162 (1994). Courts have repeatedly held that positive proof of the partiality of a judge is not a requirement, only the appearance of partiality. Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 108 S.Ct. 2194 (1988) (what matters is not the reality of bias or prejudice but its appearance); United States v. Balistrieri, 779 F.2d 1191 (7th Cir. 1985) (Section 455(a) "is directed against the appearance of partiality, whether or not the judge is actually biased.") ("Section 455(a) of the Judicial Code, 28 U.S.C. §455(a), is not intended to protect litigants from actual bias in their judge but rather to promote public confidence in the impartiality of the judicial process."). That Court also stated that Section 455(a) "requires a judge to recuse himself in any proceeding in which her impartiality might reasonably be questioned." Taylor v. O'Grady, 888 F.2d 1189 (7th Cir. 1989). In Pfizer Inc. v. Lord, 456 F.2d 532 (8th Cir. 1972), the Court stated that "It is important that the litigant not only actually receive justice, but that he believes that he has received justice."

Our Supreme Court has ruled and has reaffirmed the principle that "justice must satisfy the appearance of justice", Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038 (1960), citing Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13 (1954). A judge receiving a bribe from an interested party over which he is presiding, does not give the appearance of justice. "Recusal under Section 455 is self-executing; a party need not file affidavits in

15

support of recusal and the judge is obligated to recuse herself <u>sua sponte</u> under the stated circumstances." **Taylor v. O'Grady**, 888 F.2d 1189 (7th Cir. 1989).

Further, the judge has a legal duty to disqualify himself even if there is no motion asking for his disqualification. The Seventh Circuit Court of Appeals further stated that "We think that this language [455(a)] imposes a duty on the judge to act <u>sua sponte</u>, even if no motion or affidavit is filed." **Balistrieri**, at 1202.

Judges do not have discretion not to disqualify themselves. By law, they are bound to follow the law. Should a judge not disqualify himself as required by law, then the judge has given another example of his "appearance of partiality" which further disqualifies the judge. Should another judge not accept the disqualification of the judge, then the second judge has evidenced an "appearance of partiality" and has disqualified himself/herself. None of the orders issued any judge who has been disqualified by law are valid, they are **void** as a matter of law, and are of no legal force or effect.

Should a judge not disqualify himself, then the judge is violation of the Due Process Clause of the U.S. Constitution. **United States v. Sciuto**, 521 F.2d 842, 845 (7th Cir. 1996) ("The right to a tribunal free from bias or prejudice is based, not on section 144, but on the Due Process Clause.").

Should a judge issue any order after he has been disqualified by law, and if the party has been denied of any of his/her property, then the judge may have been engaged in the Federal Crime of "interference with interstate commerce". The judge has acted in the judge's personal capacity and not in the judge's judicial capacity. The judge has no more

16

lawful authority than your next-door neighbor (provided that he is not a judge). Should the court not follow the law as to non-represented litigants, then the judge has expressed an "appearance of partiality" and, under the law, has disqualified him/herself. Judge Holwell should never have been appointed the judge in a case involving Banker's Trust, as he was the Chief litigator for Banker's Trust at the same time that Plaintiff and her sister agreed to terminate the Samuel Strauss Trust, and the Bank was indicted by the State of New York and then received a Relief From Disabilities by the New York State Department of Parole in 1999. (See attached documents). Plaintiff brought this information to the Court's attention when she submitted the Forbes article on how White and Case, and Senior White and Case partner Richard Holwell, helped to conceal fraud, forgery and other crimes allegedly committed by Credit Lyonnais, according to the U.S. Department of Justice Report. Mr. Holwell is quoted as saying "Baloney" to the claim of a conflict of interest in their investigation of Cinema 5. (Exhibit 9, PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS AND TO MOTIONS FOR SUMMARY JUDGMENT" (Feb. 15, 2010, docket sheet). Holwell similarly cannot find conflicts of interest with his continuing to be the trier of fact in the case herein, despite having Banker's Trust as a client at the same time that Combier and Danger ended the trust and stopped any liabilities going forward. Holwell ignored the agreement both Combier and Danger signed in 1999, submitted with Plaintiff's SAC. It seems that the Court's agenda was to clear all the Defendants of wrong-doing. If Holwell or Maas recognized the terms of the agreement as final, neither could support the thesis that there was immunity for the State actors in pursuing Danger v Combier for nine (9) years.